THOMPSON, J.
 

 The plaintiff, having a judgment against the defendant Levy, caused an execution to be issued and certain property of defendant to be seized and advertised for sale.
 

 The property seized consisted of two separate lots or parcels of ground situated in the town of Rayne and an automobile.
 

 One of these lots was appraised at $3,000, the other at $1,500, and the automobile at $400.
 

 At the offering for sale by the sheriff, Mrs. Bertha Levy, the wife of the judgment debt- or, bid the appraised value for each of said properties, but the sheriff declined to accept the bid and to make the adjudication, for the reason that, as shown by a mortgage certificate, each of said properties was incumbered with a conventional mortgage antedating the judgment under which the seizure was made for an amount greatly exceeding the appraisement and the amount bid by Mrs. Levy.
 

 The mortgage on the first lot mentioned was for $10,000, represented by two notes of equal amount. The notes were payable to the maker’s own order and indorsed in blank, but the mortgage to secure the payment of said notes was made to the Commercial Bank of Rayne.
 

 The mortgage on the second lot was in favor of Clyde Webb to secure a note for $3,000.
 

 The mortgage on the automobile was to secure a note for $1,000 payable to the maker’s own order.
 

 The seizing creditor filed separate rules against the sheriff, the clerk of court, the judgment debtor, Mrs. Levy, the successful bidder, and the holders of the various mortgage notes, to show cause why the mortgages should not be canceled and Mrs. Levy be compelled to pay her bid and to accept title from the sheriff.
 

 It was alleged in these rules that the debt represented by the several notes and mortgages had been paid and the mortgages discharged long prior to the seizure of the property under plaintiff’s judgment.
 

 On a trial the several rules were discharged and the plaintiff’s demand rejected.
 

 In plaintiff’s brief, it is admitted that plaintiff was unable to make certain its claim that the mortgage held by Clyde Webb and the mortgage on the automobile had been
 
 *499
 
 paid; hence we are only presently concerned with the notes and mortgage of $10,000 held by the Commercial Bank.
 

 The two notes and the mortgage were executed on February 3, 1920, and were for a loan of $10,000 made by the bank directly to Levy. As additional security for the said loan, the bank held an insurance policy on the building situated on the mortgage property for $10,000, with a loss-payable clause running in favor of the bank.
 

 On the day the two notes were executed, they were entered on the liability register kept by the bank, evidencing the fact that the said notes were an asset of the bank and a direct obligation and liability of Levy to the bank.
 

 The notes were given the serial numbers 18634 and 18635 and were so held until March 8, 1921.
 

 The insured property was destroyed by fire and the amount of the policy, $10,000, was paid by the insurance company in a check issued in favor of Levy and the bank jointly. This check was turned over by Levy to the bank and appears as a credit or deposit on the account of Levy under date of March 8, 1921.
 

 On the last-named date Levy gave the bank his check drawn on the said bank and payable to the said bank for $10,813.35, being the exact amount of the principal of the two notes with the interest due thereon up to that date. The check was paid and charged to Levy’s account.
 

 The liability register also shows that the two notes bearing the serial numbers as heretofore given were entered as a credit to Levy and the word “paid” placed opposite the said notes on said register.
 

 At the time of the transaction just mentioned, Levy owed the bank, including the two mortgage notes, the sum of $21,268.41.
 

 So that, when the two notes were credited to Levy on the liability register, it left him owing the bank on other notes secured by other collaterals the sum of $11,268.41.
 

 On April 1, 1921, a new note was given to the bank by Levy for the last above-named amount bearing the number 20184, and to this note the two mortgage notes were attached as collateral.
 

 . Thereafter, beginning with June 30, 1921, the two notes appear at intervals on the liability register as collateral to various other notes of Levy to the bank.
 

 At no time after March 8, 1921, were the said two notes carried on the books of the bank as representing the original loan of $10,000 to Levy, but only as collateral security for the other indebtedness of Levy to the bank.
 

 The cashier of the bank and Levy each testify that the notes, while marked paid on the books of the bank, were not in fact paid and were never turned over to Levy.
 

 The cashier, however, admits, and as we have already stated, the books' show unmistakably, that the said notes were credited to Levy, were marked paid on the register, and thereafter were held by the bank, not as an original obligation, but as collateral to other notes.
 

 We entertain no doubt whatever that the transaction, as we have stated it, operated in law a payment of the two notes and the discharge of the mortgage.
 

 The fact that the bank did not actually surrender the notes to Levy, but retained possession of them, does not militate in the least against this conclusion; nor does that fact serve in the slightest degree to disprove the fact of payment as evidenced by the record and the conduct of the parties.
 

 Levy had a perfect right to reissue the two notes and to place them with the bank as collateral to his other notes, and this he could repeat from time to time as he executed new notes representing a debt other than the one
 
 *501
 
 for which the notes were originally executed, and this is what was actually done.
 

 To accomplish this fact, it was not necessary for the bank to have actually returned the notes to Levy.
 

 That would have been doing a vain and useless thing under the circumstances.
 

 The rule is well settled, at least in the jurisprudence of this state, that, when a mortgage is given for a specific debt to a particular creditor, payment of that debt extinguishes the mortgage and a reissue of the note will not revive or reinstate the mortgage.
 

 Indeed that is the plain provision of the Code.
 

 “Hence it happens that in all cases where the principal debt is extinguished the mortgage disappears.” C. C. art. 3285.
 

 It is otherwise when the mortgage note is not for a specific debt, but for future use and in favor of any future holder. In such a case the note may be reissued and used as collateral and the accessory right of mortgage preserved intact.
 

 In the early case of Hill v. Hall, 4 Rob. 418, it was said:
 

 “But it is argued by the appellant’s counsel that the extinction of the debt between John S. Walton and Joseph G. Walton did not incapacitate the former from contracting a new debt to Hill, and handing over to him, as evidence of it, the same notes, secured by mortgage on his property; that Hill could have recovered on these notes from John S. Walton, and can therefore pursue his property, which has since been sold subject to the debt. To this argument, the answer is obvious; that the notes thus reissued by the drawer, undoubtedly, bind him, but that, by replacing them in circulation, he cannot revive the obligations of the other parties to the notes, or the mortgages on the defendant’s property, which, being only an accessory to the debt between the maker and the payee, became null and void as soon as the debt itself was extinguished.”
 

 In the more recent case, Succession of Phillips, 22 So. 202, 49 La. Ann. 1020, it was said:
 

 “The proposition that the mortgage was extinguished by the return of the note to the maker, and the mortgage could not be revived by the issue of the note, has been the subject of previous decisions of this court. When the mortgage is for a specific debt, payment extinguishes debt and mortgage, and the subsequent issue of the note will not revive the mortgage. * * *
 

 “But our jurisprudence may be de'emed fixed that, when the mortgage [note] is not for a specific debt, but for future use, and hence in favor of any future holder, the use of the note as a collateral, and its return to the maker, will not cancel the mortgage in the event of the reissue of the note”—citing Succession of Dolhonde, 21 La. Ann. 5; Insurance Co. v. Jamison, 25 La. Ann. 364; Morris v. Gain, 1 So. 797, 2 So. 418, 39 La. Ann. 712; Levy v. Ford, 6 So. 671, 41 La. Ann. 881.
 

 The principle recognized in the eases referred to is controlling in this case. The notes and mortgage were executed for a specific debt in favor of the bank and for no other. The $10,000 was a loan directly from the bank, and the notes and mortgage were given for that loan. That particular debt was paid to the bank by Levy, and thereafter the bank held the notes, not as securing or representing the debt for which they were given, but as collateral for another and different debt due by Levy to the bank.
 

 By the payment of the original debt the mortgage was extinguished, and could not be revived and substituted for a new debt by a reissue of the notes.
 

 From this view, it follows that the judgment will have to be modified and amended.
 

 It is therefore ordered and decreed that, in so far as the judgment appealed from discharged the rule as against the Commercial Bank and the other defendants with respect to the mortgage of said bank on lot 4 and eastern 10 feet of lot 3 in block 1 of the Cunningham division, of the town of Rayne, fronting 50 feet on Texas avenue and running back 120 feet between parallel lines, the said judgment is set aside, and it is now or-1 dered that the clerk of the" court of Acadia
 
 *503
 
 parish be and he is hereby directed to cancel and erase from the mortgage records of said parish the mortgage executed by Levy in favor of said bank for $10,000 bearing date of February 3,1920.
 

 It is further ordered that the sheriff of said parish complete the adjudication of the aforementioned property and execute a deed thereof to Mrs. L. Bertha Webb Levy on the payment by her of the sum of $3,000; that the said Mrs. Levy be condemned to accept said deed and to pay the said price. In the event that Mrs. Levy declines to comply with her said bill and to accept said deed, then this judgment shall stand as a title to said property with the right of the plaintiff to proceed against the said Mrs. Levy and the said property for the collection of said purchase price with 5 per cent, per annum interest from November 26, -1921, till paid.
 

 With this modification and amendment the judgment is otherwise affirmed. The Commercial Bank, the defendant Ernest Levy, and the said Mrs. Levy to pay all cost of this proceeding.