**No. 2946**

**Second Circuit**

---

**AVANT v. HODGE**

---

(May 13, 1927. Opinion and Decree.)

---

*(Syllabus by the Editor)*

1. **Louisiana Digest—Mortgages—Par. 120; Bills and Notes—Par. 186.**

Payment by the maker of a note who borrows money from a third person operates as a discharge of the obligation

and the mortgage securing the note is thereby extinguished under Article 3252 of the Civil Code.

2. **Louisiana Digest—Mortgages—Par. 120, 132.**

A mortgage which has been extinguished by the payment of the obligation, although it has not been cancelled on the records, cannot be revived or reinstated by a holder who came into possession of the note after it was paid.

Appeal from the Third Judicial District Court of Louisiana, Parish of Union. Hon. S. D. Pearce, Judge.

Action by J. L. Avant, et als., against Dr. Wess Hodge, et als.

There was judgment for plaintiffs and defendants appealed.

Judgment affirmed.

H. G. Fields, of Farmerville, attorney for plaintiffs, appellees.

H. E. Dawkins, of Farmerville, attorneys for defendants, appellants.

ODOM, J. This is a suit to cancel a vendor's mortgage operating against the south half of the southeast quarter of Section thirty-two, Township nineteen north, Range one east, in Union parish, Louisiana, brought by R. J. Weems, the present owner of the land, and J. L. Avant, who sold the land to Weems under warranty.

Plaintiffs allege that the note for $300.00, given to represent part of the purchase price of the land, has been paid by the maker but that the maker failed to have the mortgage cancelled.

The suit is against Doctor Wess Hodge, who claims to own the note, and against the clerk of the court and ex-officio recorder.

The clerk and ex-officio recorder answered that he had no interest in the matter, but could not cancel the mortgage without the production of the note or proof of its payment.

Hodge answered that J. A. Poston, the maker of the note, had at one time become indebted to the Ouachita National Bank or the Citizens National Bank of Monroe and that he, Hodge, had endorsed Poston's note to the bank and that the note in question was pledged by Poston as collateral to the bank and that the bank called upon him, Hodge, to pay the debt; that he paid Poston's debt to the bank, and avers:

"That he acquired the same (the mortgage note in question which he claims was pledged by Poston as collateral) from the Ouachita National Bank and the Citizens National Bank by reason of having paid the note of J. A. Poston upon which he was surety and endorser, and that he is the owner of the said note (the note in question) and has a right to the ownership of the same."

He especially alleges that said note was never paid by Poston, Avant, Weems, or anyone else, and that he had possession of said note, but that the same was lost or mislaid by him and that he had advertised its loss as the law provides.

There was judgment ordering cancellation of the mortgage, and Hodge has appealed.

### OPINION

On November 27, 1918, Forest Hendrix sold to J. A. Poston the south half of the southeast quarter of Section thirty-two, Township nineteen north, Range one east,

in Union parish, Louisiana, for a consideration of $960.00, $60.00 of the amount being paid in cash and the balance of the price was represented by two notes, one for $300.00, due October 10, 1919, and one for $600.00, due October 10, 1920, both secured by vendor's lien on the property sold.

The note for $600.00 was presented for cancellation and the recorder of mortgages cancelled the mortgage to that extent; but the note for $300.00 was never presented for cancellation. This is the note in question. Plaintiffs allege that this note has been paid, and sue to have the mortgage cancelled in full.

As stated, the $300.00 mortgage note was given to represent a portion of the purchase · price of the land which Poston purchased from Forest Hendrix. According to the recitals in the deed and mortgage, the note was made payable to Poston's order and by him endorsed in blank, the mortgage running in favor of the vendor or any future holder of the note.

Just what disposition was made of the note when the sale was closed is not disclosed by the record. Hendrix being the vendor of the land is presumed to have gotten possession of the note, but the record is silent on that point. Poston is dead and Hendrix was not called as a witness. But the testimony discloses that on November 29, 1918, two days after the execution of the note, J. A. Poston, the maker thereof, carried it to the Citizens National Bank of Monroe, which bank cashed it for him. The note was then endorsed by Avant Brothers. Hendrix had nothing to do with this transaction. It is probable that Poston, then or later, paid the cash to Hendrix. At any rate, Hendrix dropped out of the transaction entirely.

The records of the bank show that on October 10, 1919, the day the note fell due, someone made a payment thereon of $155.00, and that on November 3 following the balance due on the note, $166.13, including accrued interest, was paid to the bank, and that thereupon the note was delivered by the bank by someone, the testimony not disclosing to whom. Mr. Morton, who handled the transaction for the bank, testified that the final payment was made after the maturity of the note, but he has no recollection whether the note was marked paid or not, but that the custom of the officers of the bank was to mark all notes paid unless especially requested not to do so. But he testified that the note was paid and not transferred. He had no recollection as to who paid the note, but he said that the bank held the note not as collateral but as a principal obligation. In other words, that his bank cashed the note.

While there is some conflict in the testimony on that point, we think this mortgage note went ·into the hands of the defendant, Dr. Hodge, after it left the bank. The testimony does not, however, warrant the holding that the bank transferred or even delivered the note to him. The bank officials have no recollection that Dr. Hodge was present when the note was paid, although Dr. Hodge and one other witness say he was present. But whether he was present or not, the fact is that the note was owned by the bank and was paid in full. The bank officials say that Poston, the debtor, paid it. Hodge says he paid it. But his testimony as a whole does not show that. On the contrary, it shows that

Hodge loaned Poston the money with which to make the last payment and took Poston's note for something over three hundred and seventy dollars to cover Poston's indebtedness to him for the amount he advanced him on this transaction and a balance due on an open account. Dr. Hodge was asked:

"What, if anything, did you take from Mr. Poston for the amount he owed you and the one hundred and sixty ($160.00) dollars that you paid for this three-hundred-dollar ($300.00) note?"

And he said:

"Took a note from Mr. Poston for three hundred and seventy ($370.—) some odd dollars; that was the whole thing that he owed me for the amount he owed me and what I paid the Ouachita National Bank."

And, again, Dr. Hodge says:

"I took Mr. Poston's note for the amount he owed me, for the amount I paid on the note, the land note, and for an additional amount that he owed me on an account."

The amount, therefore, that was advanced by Dr. Hodge was either advanced to or for Poston in order that his debt to the bank might be paid in full, and it was paid in full. What happened, we think, is that Dr. Hodge loaned Poston the money to make the final payment on this mortgage note and that when it was paid the bank delivered the note to Poston, who later turned it over to Hodge to be held by him as collateral, for Dr. Hodge says:

"He gave me this chattel mortgage and three hundred ($300.00) dollars mortgage to take up that and to take up the balance that he owed me at the store."

From this it is clear that the mortgage note when paid at the bank went into the hands of Poston, the obligor. When it was paid by Poston and delivered to him it became a dead piece of paper. The obligation evidenced thereby had been paid in full and was extinguished. The note was given by Poston as evidence of a particular debt, part of the purchase price of land. The bank cashed the note and became the owner of it. The note was never used by Poston nor held by the bank as collateral. The debt due by Poston, as evidenced by the note, was the property of the bank and payment by Poston to the bank satisfied the debt and the note and mortgage were extinguished.

"Hence it happens that in all cases where the principal debt is extinguished, the mortgage disappears with it."
Civil Code, Art. 3252.

Poston could not, after paying the note, reissue it.

When a mortgage note is not for a specific debt but for future use and in favor of any future holder, the note may be reissued by the maker and used as collateral and the accessory right of mortgage preserved intact; but—

"the rule is well settled, at least in the jurisprudence of this state, that when a mortgage note is given for a specific debt to a particular creditor, payment of the debt extinguishes the mortgage and a reissue of the note will not revive or reinstate the mortgage."

Mente & Co. vs. Levy, 160 La. 496, 107 South. 318.

"When the mortgage is for a specific debt, payment extinguishes the debt and mortgage, and the subsequent issue of the note will not revive the mortgage."

Succession of Phillips, 49 La. Ann. 1019, 22 South. 202.

In Pons vs. Yazoo & M. V. R. R. Co., 131 La. 313, 59 South. 721, it was held that matured paper cannot be reissued after payment.

Of course, the bank could have transferred the note to Hodge, but that was not done. Hodge does not claim that the note was transferred to him.

Lastly, it is argued by counsel for Dr. Hodge that upon payment by him of the balance due on the note to the bank he became legally subrogated to the rights of the bank by virtue of such payment, the bank's claim being preferred to his own under Article 2161 of the Civil Code.

Counsel's position might be well taken if Hodge had in fact paid the bank and had taken up the note; but, as already stated, Hodge did not pay the bank but merely loaned Poston the money with which to make the payment, and instead of his taking up the note the note went back into the hands of Poston, the maker and obligor.

"Where the maker of a note borrows money from a third person with which he pays the note, it will operate as a payment unless there is a clear intent that it should operate as a purchase and not as a payment."

8 Corpus Juris 590.

The lower court held that the note had been paid, the obligation discharged, and ordered the mortgage cancelled.

We find no error in the judgment and it is affirmed.