CULPEPPER, Judge.
In this suit the plaintiffs seek to enjoin F. O. Didier, Jr., Sheriff of the Parish of Avoyelles, and the Simmesport State Bank from proceeding further with the advertisement or sale of certain realty which the defendant bank is seeking to have sold in Suit No. 20013 on the docket of the Twelfth Judicial District Court for the Parish of Avoyelles entitled "Simmesport State Bank vs. N. J. Scallan” which is a suit to foreclose on a mortgage by executory process. Plaintiffs, Eugene N. Scallan, Mrs. Alamae Scallan Roy and Max D. Scallan, allege that they are present owners of the property, having acquired the same from their mother, Mrs. Eulalie Young Scallan (also appearing as a party plaintiff) by an act of sale dated July 8, 19S8. Plaintiffs allege further that Mrs. Eulalie Young Scallan acquired the said property from Noah J. Scallan in an act of partition and settlement of community property dated and recorded on May 29, 1956 in which act of partition and settlement the said Noah J. Scallan expressly declared that the property in question was free and clear of any mortgages or encumbrances. Petitioners allege that notwithstanding said declarations in said act of partition and settlement, Noah J. Scallan, at the time of said partition, had in his possession 10 mortgage notes made by himself payable to himself and by him endorsed, each in the sum of $1,000, dated November 10, 1949, one of the said notes being payable each year beginning December 1, 1950, which notes were secured by a mortgage in favor of "any future holder or holders of the herein described notes”. The mortgage covers the property in question and was duly recorded on November 14, 1949.
Petitioners allege further that after Noah J. Scallan and Eulalie Young Scallan were judicially separated from bed and board and entered into said act of partition and settlement of the community in May of 1956, Noah J. Scallan did in August of 1956, attempt to reissue the 10 mortgage notes dated November 10, 1949, which notes he had reacquired, by pledging the said notes to the Simmesport State Bank as security for a promissory note in the sum of $5,000. Petitioners allege that the said ten mortgage notes had been extinguished by confusion when Noah J. Scallan reacquired them and consequently the mortgage was extinguished.
Petitioners allege further that Mrs. Eulalie Young Scallan did not sign the 1949 mortgage or the notes secured by same and that she is therefore not bound thereby. Petitioners further allege fraud on the part of Mr. Noah J. Scallan and the Simmesport State Bank and pray that the mortgage and the 10 notes secured thereby be declared extinguished and that the inscription of said mortgage be cancelled.
In their answer, defendants alleged that at the time the 10 mortgage notes were pledged to the Simmesport State Bank on August 7, 1956, Mr. and Mrs. Scallan had become reconciled and were living together as man and wife and that she knew that the said mortgage notes were being pledged by Mr. Scallan as security for a loan of $5,000 as is evidenced by the fact that she signed her name upon the reverse side of the said promissory note under a typed notation thereon which stated “This note secured by R/E mortgage in the amount of $10,000.00 dated November 10, 1949, payable to himself and due on demand”. Defendants allege further that no payments were made on said promissory note except interest, that the said note was payable on demand, and that when Noah J. Scallan advised the bank that he was unable to pay this indebtedness, it had no alternative but to foreclose on the mortgage notes which it held in pledge.
In the lower court a temporary restraining order and a preliminary injunction were *51 granted, but, on trial of the merits for a permanent injunction, judgment was rendered in favor of the defendants denying the injunction relief sought. From this judgment plaintiffs have taken a suspensive and devolutive appeal.
The relevant facts proved during the trial are substantially as alleged with the exceptions hereinafter discussed. The first argument of plaintiffs, which we deem it appropriate to consider, is that the mortgage notes issued in 1949 were for a specific debt, and were not for future use in favor of any future holders, and consequently that the mortgage was extinguished when Mr. Noah J. Scallan reacquired the notes. This argument is without merit. An examination of the 10 mortgage notes shows that they are made payable to a nominal party, that is, they were made payable to the maker and by him endorsed. The mortgage itself shows that it is drawn in favor of “any future holder or holders of the herein described notes”. The jurisprudence is well settled that such mortgage notes drawn for future use and in favor of any future holder may be reacquired by the maker and reissued as collateral security and the mortgage will not be extinguished. In the case of Mente & Co., Inc. v. Levy, 160 La. 496, 107 So. 318, 320, the court cited many authorities and held as follows:
“The rule is well settled, at least in the jurisprudence of this state, that, when a mortgage is given for a specific debt to a particular creditor, payment of that debt extinguishes the mortgage and a reissue of the note will not revive or reinstate the mortgage.
“Indeed that is the plain provision of the Code.
“ ‘Hence it happens that in all cases where the principal debt is extinguished the mortgage disappears.’ C.C. Art. 3285.
“[3] It is otherwise when the mortgage note is not for a specific debt, but for future use and in favor of any future holder. In such a case the note may be reissued and used as collateral and the accessory right of mortgage preserved intact.”
Under the holding in the Mente & Co., Inc. case, and the authorities cited therein, it is clear that the 1949 mortgage notes were not for a specific debt, but were for future use in favor of any future holder and consequently could be reacquired by the maker and reissued as collateral security, without extinguishing the mortgage. However, plaintiffs argue that even though we conclude that it was a collateral mortgage to secure a future loan it is effective as to third parties only from the date of reis-suance of the notes and not from the date of original execution and recordation and that therefore, in the instant case, the mortgage is effective from the date of reissuance of the mortgage notes by pledging them to defendant bank which date was approximately 2 months after Mrs. Eulalie Young Scallan acquired the property in the community settlement above described. Since this litigation will be determined under these principles of law, we quote at length from the case of Hammond State Bank & Trust Company v. Broderick, 179 La. 693, 154 So. 739, 740, in which Broderick executed a $6,000 future holder mortgage on a dwelling which he owned, but did not occupy at the time. Broderick first pledged the note to a bank as collateral for a loan which he later repaid. He reacquired the note and kept it in his possession for about a year until he repledged it to the plaintiff, Hammond State Bank & Trust Company, as collateral security for a new loan. Broderick failed to pay the second loan and when the plaintiff bank sought to foreclose the facts showed that although at the time the mortgage was originally executed, Broderick and his family were not living in the dwelling, that previous to the date that he reissued the note to the Hammond State Bank & Trust Co., Broderick and his family had moved into the dwelling and they therefore asserted a homestead exemp *52 tion in the foreclosure proceedings. The court had squarely before it the question as to whether the mortgage was effective as of the date of its original execution and registry or whether it was effective only from the date of reissuance of the note to the plaintiff bank insofar as the intervening homestead rights were concerned. The court reviewed the jurisprudence and held as follows:
“1. This question is settled by the principles announced in Roberts v. Bauer, 35 La.Ann. 453 and Walmsley v. Resweber, 105 La. 522, 30 So. 5, 11. In Roberts v. Bauer the court held that a mortgage made by a mortgagor alone for the security of bonds to be negotiated is not ab initio invalid for want of a concurring mortgagee; but it stands as a valid unilateral contract, remaining suspended and imperfect until the bonds are issued and negotiated when the mortgage takes effect in favor of the holder of the bonds, whose acceptance of the mortgage is sufficiently evidenced by the acceptance of the bonds secured thereby. And in Walmsley v. Resweber, the court held, on rehearing, that a mortgagor in possession of notes secured by first mortgage could not reissue the notes to the prejudice of a second mortgage which he executed while he had them in his possession. The exposition of this legal principle is tersely and clearly set forth in the concurring opinion of Mr. Justice Provosty, as follows, viz.:
“ ‘A person may make his mortgage paper in this way (in favor of a nominal mortgagee and the future holders of the mortgage note) and hold it as long as he pleases, and by merely issuing it create a mortgage (Roberts v. Bauer, 35 La.Ann. 455); but, as against third persons, whose rights have attached in the meantime, the mortgage takes date and rank from issuance, — that is, from acceptance of the mortgage by the contractee, — and not the registry. So long as the maker holds the paper, there is no mortgagee and no mortgage. A person cannot, all by himself, make a mortgage. A mortgage is a contract, and a person cannot, all by himself, make a contract. He may make the evidence of a mortgage, —the mortgage notes, the mortgage act, and the registry; but he cannot, all by himself, make the contract. The contract can come into existence only by the intervention of a second person, a contractee. Mere acceptance of the notes by such second person will create the mortgage, will form the finculum juris; but before and until such acceptance there is no contract and no mortgage.’
“[2,3] Under these authorities, it is plain that during the time the mortgage note was held in the possession of its maker, the mortgage itself remained dormant and imperfect until the mortgage note was reissued by Broderick and accepted in pledge by the Hammond Bank & Trust Company. At that time, however, the right of Broderick and his family to a homestead exemption had attached to the property. That exemption existed without registry, the mere occupancy of the place by Broderick and his family constituting sufficient notice of that fact. Const. 1921, § 1, Art. 11. Thereafter Broderick could not by reissuing the note create a mortgage to the prejudice of his homestead rights.
“We find nothing contrary to this view in the cases of Mente & Co. v. Levy, 160 La. 496, 107 So. 318, and Citizens National Bank v. Loranger, 163 La. 868, 113 So. 129.”
In the instant case if Noah J. Scallan never issued, or if he reacquired the collateral mortgage notes, before Mrs. Scallan acquired the property in 1956 and then had the notes in his possession until he reissued them at the time of the pledge to the Simmesport State Bank, then clearly under the above authorities the mortgage remain *53 ed dormant and imperfect until the notes were reissued on which date it revived and took effect but could not do so to the prejudice to the intervening right of Mrs. Scal-lan who had acquired record title to the property. See also 34 TLR 800.
In answer to this argument, the defendant bank has called it to our attention that all the record in this case shows is that at the time the mortgage notes were pledged in August of 1956, they were in Mr. Scallan’s hands. Counsel is correct. A careful study of the record reveals no ■evidence indicating what happened to these mortgage notes between the time they were ■originally signed in 1949 and the time they were pledged in August, 1956. Defendant argues further that at the time Mr. Scallan pledged the notes he was no longer the owner of the property and, insofar as the record discloses, he could have reacquired the mortgage notes after the community settlement and thereby become the holder and owner of said mortgage notes. Pre-termitting the question as to whether Mr. Scallan, after the community settlement, could have reacquired the said notes for valuable consideration and then reissued them, even though he was the maker thereof, but no longer the owner of the property, it is our opinion that this contention by defendant must fall because in the act of partition and settlement of the community Mr. Scallan specifically assumed all mortgages and encumbrances owed by the community on this property and warranted title to the property received by Mrs. Scal-lan. Even if we assume, as defendant suggests, that Mr. Scallan acquired these 10 mortgage notes from some third person after the community settlement, he would then have become the owner of an obligation of which he had assumed payment, and the debt represented by the notes would have become extinguished by confusion under the provision of LSA-C.C. art. 2217 which provides that when the qualities of debtor and creditor are united in the same person, there arises a confusion which extinguishes the obligation. When the debt was extinguished by confusion, the mortgage, under the above authorities, became dormant and remained so until revitalized by the reissuance of the mortgage notes, but this occurred after the intervening acquisition of title by Mrs. Scallan.
The early case of Hall, Rodd & Putnam v. Chachere, Supreme Court 1873, 25 La. Ann. 493 is authority for the proposition that where a person acquires notes, the payment of which he has assumed, the debt represented by said notes is extinguished. Although we have found no later authority for this rather unusual situation, the result which we have reached seems inescapable under LSA-C.C. art 2217.
It is therefore our conclusion, that although the record shows only that Mr. Scallan was the holder of these notes on the date of the pledge thereof, and does not show that he ever issued them or reacquired them, there are only three possibilities. The first possibility is that he never issued the notes from 1949 until the date of the pledge in 1956 in which event the mortgage took effect from the date of the pledge and cannot prejudice the rights of Mrs. Scallan and her vendees. The second possibility is that Mr. Scallan issued the notes and reacquired them before the community settlement and then held them until the date of the pledge, in which event the law is clear under Hammond State Bank & Trust Company v. Broderick, supra, that as to the rights of the intervening third party, Mrs. Scallan, the mortgage took effect only from the date of reissuance of the notes. The third possibility is that Mr. Scallan issued the mortgage notes before the community settlement and then, after the community settlement, reacquired them from some third party holder, in which event he became the holder of notes representing a debt which he had assumed and the debt was consequently extinguished by confusion, thereby rendering dormant and imperfect the mortgage until it was revitalized by the reissuance of the notes at the time of their pledge. In our opinion, it is therefore inescapable under the facts *54 of this case that, insofar as Mrs. Scallan and her vendees are concerned, the mortgage did not take effect until the notes were pledged to the defendant bank and consequently cannot affect the title of the plaintiffs.
The defendant also contends that Mrs. Scallan and her successors in title are es-topped from urging any objections to the validity of this collateral mortgage because Mrs. Scallan endorsed her husband’s $5,000 promissory note on the reverse side under a typed notation that the promissory note was secured by the real estate mortgage in the sum of $10,000 dated November 10, 1949. Defendant argues that Mrs. Scallan, by her actions, induced the Simmesport State Bank to believe that the mortgage was valid and effective security for the loan, that she and her husband received the benefit of the $5,000 and she is therefore estopped from attacking the validity of the mortgage. The evidence on this issue consists of the testimony of Mrs. Scallan who stated that at the time of the community settlement her husband told her that the 1949 mortgage had been paid and cancelled and that when she endorsed the $5,000 promissory note in 1956 for her husband, she did so only as an endorser. Mrs. Scallan testified positively that when Mr. Scallan brought the promissory note to their home for her to sign, the typewritten notation regarding the 1949 real estate mortgage in the sum of $10,000 was not on the reverse side thereof and she did not know of the intended pledge. Mrs. Scallan also testified that she had no knowledge whatever that the mortgage notes had been pledged to the defendant bank or that it was holding same until the foreclosure proceedings were filed in 1959.
As opposed to this testimony by Mrs. Scallan, we have only the testimony of Mr. Merlin Lacombe, who was cashier of the Simmesport State Bank in 1956 when the said notes were pledged. Mr. Lacombe testified that when Mr. Scallan, who is president of the Mansura State Bank, requested a loan of $5,000 from the defendant bank, he prepared the note on an “envelope form” used where collateral was to be pledged in security thereof and handed the note to Mr. Scallan who took the same out of the bank and returned later with the note showing that Mrs. Scallan had endorsed. However, when Mr. Lacombe was asked specifically whether he had typed' the pledge notation on the reverse side of the promissory note before or after Mrs. Scallan’s endorsement, he testified he simply did not know. Mr. Scallan was not placed-on the witness stand. Therefore, the testimony of Mrs. Scallan stands uncontradictedi and must be accepted by us.
Defendant argues further that even though we find the pledge notation, was not typed on the back of the promissory note at the time of Mrs. Scallan’s endorsement, she is bound by the pledge because on the face of the note it was stated that the note was secured by the pledge of security “herewith delivered”. Clearly this, argument has no merit. Even though the face of the note might have stated that it was secured by the pledge of securities-delivered therewith, Mrs. Scallan had no. way of knowing what securities Mr. Scallan' planned to pledge and actually had no way of knowing whether he was going to pledge-any securities. One of the fundamental essentials of the doctrine of estoppel is-that the party sought to be estopped must have had knowledge of the facts, or the means at hand of knowing, or must have-been in such a position that he ought to-have known them. See Christen v. Coulon, La.App., 94 So.2d 47; Little v. Barbe, 195 La. 1071, 198 So. 368; Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604; Succession of Valdez, La.App., 44 So.2d 151 and 19 Am.Jur. 648. In the present case the un-contradicted testimony of Mrs. Scallan is that she actually thought the 1949 mortgage had been paid and cancelled and was no-longer in existence and even though she was in error in this regard she certainly had no knowledge, or way of knowing,, that after she endorsed the promissory- *55 note, Mr. Scallan would pledge the mortgage notes to the bank. She therefore had no actual or constructive knowledge that the bank might rely on these particular mortgage notes as security for the loan.
Another reason for the denial of the plea of estoppel lies in the settled jurisprudence that estoppels are not favored in the law because no party ought to be precluded from making out his case according to its truth unless by force of some positive principle of law or clearly proven facts. Estoppels should not be sustained by mere argument or doubtful inference. This is particularly true in the case of an estoppel in pais which involves conduct amounting to a false representation or concealment of material facts. Estoppel must be strictly construed and should not be enforced unless substantiated in every particular. Of course, the party urging estoppel bears the burden of proving the facts on which it is urged with the requisite certainty. See Sonnier v. Fris, 220 La. 1085, 58 So.2d 393; Union Oil Co. of California v. Touchet, 229 La. 316, 86 So.2d 50; Hayward v. Carolina Insurance Co., La.App., 51 So.2d 405 and 19 Am.Jur. 643.
Defendant’s argument that it is protected against plaintiffs intervening acquisition of ownership by the “pact de non aliendo” contained in the 1949 mortgage has no merit for the reason discussed above that as to these intervening third parties the mortgage is effective only from the date the notes were reissued in pledge to defendant bank. Therefore plaintiffs now own the property free from the mortgage sought to be foreclosed.
For the reasons hereinabove set forth the judgment appealed from is reversed and set aside and judgment is now rendered in favor of the plaintiffs and against the defendants, issuing a permanent injunction, permanently restraining and enjoining the defendants, F. O. Didier, Jr., Sheriff of the Parish of Avoyelles, and the Simmes-port State Bank, from proceeding with the advertisement or sale of the real property described in Suit No. 20013 on the docket of the Twelfth Judicial District Court for the Parish of Avoyelles, entitled “Simmesport State Bank vs. Noah J. Scallan.”
It is further ordered, adjudged and decreed that the title of the plaintiff’s Eugene N. Scallan, Mrs. Alamae Scallan Roy, and Max D. Scallan, to the below described property be recognized as being clear and free of that certain mortgage from Noah J. Scallan to Future Holders for the sum of $10,000 dated November 10, 1949, and recorded in Mortgage Book 162, page 451 of the records of the Parish of Avoyelles, State of Louisiana, and that said mortgage be cancelled and erased from the records insofar as it affects the title of plaintiffs to the following described property, to wit:
A certain lot or parcel of ground with all buildings and improvements and contents in store building situated in the Town of Mansura, Parish of Avoyelles, Louisiana, and at the corner of Main and Convent Streets, the same being more particularly described as follows:
Beginning at the intersection of the north line of said Convent Street with the west line of Main Street, which point is the southeast corner of the lot herein being described, thence northerly along said west line a distance of 80 feet to a point; thence westerly parallel to the north line of Convent Street a distance of 105 feet to a point; thence southerly parallel to the west line of Main Street a distance of 80 feet to a point on the North line of Convent Street, thence easterly therewith a distance of 105 feet to the point of beginning. Being the same property acquired by Noah N. Scallan by deed dated September 1, 1949, from Arkansas Fuel Oil Company recorded in Al. Bk. A-138, folio 122, records of Avoyelles, Parish, Louisiana.
All costs incurred in the lower court, as well as all costs of this appeal are assessed *56 against the defendant, Simmesport State Bank.
Reversed and rendered.