LANDRY, Judge.
This appeal results from a foreclosure proceeding instituted by plaintiff-appellee, Baton Rouge Wood Products, Inc. (Wood Products), against its mortgage debtor, Emile G. Ezell, in which there was put at issue the validity of an antecedent mortgage held by another of Ezell’s creditors, namely, Southern Pipe and Supply Company (Southern) from the judgment of the trial court declaring Southern’s ranking mortgage cancelled because of payment and ordering payment of appellee’s subsequent mortgage in preference thereto, Southern has appealed.
We think our learned colleague below has correctly resolved the issues presented for determination herein.
At the foreclosure sale held June 2, 1965, Southern became the adjudicatee of subject property upon a hid of $33,200.00. The necessary mortgage certificate prepared by the Clerk of Court disclosed that the property in question was subject to charges aggregating the sum of $36,965.90 consisting of costs in the sum of $419.93, taxes amounting to $59.45, a first mortgage in fa *374 vor of one Florie Higgins totaling $9,504.-81, the asserted second mortgage of Southern on which there was a balance due of $10,438.50, and finally, the mortgage of ap-pellee, Wood Products, totaling $16,543.21.
Appellant paid into the hands of the Sheriff the sum of $13,256.69, the equivalent of that portion of its hid which exceeded the total of those obligations secured by encumbrances apparently superior or preferred to the claim of the seizing creditor, Wood Products. It follows that if the mortgage of appellant, Southern, is declared valid and ordered paid in preference to that of ap-pellee, the funds available will leave an unsatisfied balance of $3,765.90 on the claim of the seizing creditor, Wood Products.
Appellee concedes appellant’s mortgage was previously recorded and admits the priority of appellant’s claim predicated upon order of recordation. Appellee argues, however, that appellant’s mortgage was cancelled and extinguished by payment of the precise indebtedness thereby secured. On this ground Wood Products claims its mortgage is entitled to preferential payment over that of appellee.
On the other hand, appellant readily acknowledges that the specific debt for which its mortgage was granted, namely, a cash advance of $9,000.00 has been paid. Nevertheless, appellant argues that its mortgage was kept alive, valid and enforceable by virtue of a certain antecedent Collateral Pledge Agreement (Agreement) executed under date of April 3, 1962, in favor of appellant by the debtor Ezell, a plumbing contractor to whom appellant sold materials on account and made cash advances.
The agreement in question, appearing of evidence in the record, in substance recites Ezell’s desire to carry on a general business relationship with appellant whereby the latter will from time to time sell materials on credit and make cash advances to the former. To secure these proposed transactions Ezell expressly pledged to appellant any and all funds or assets belonging to him and held by appellant as security for all such credit sales and cash advances. The agreement provides a limitation upon the arrangement in the sum of $30,000.00. It is further stipulated that such securities as. shall be pledged to appellant are to be held as security for any and all debts, present or future, owed by Ezell to Southern. Appellant concedes that upon payment by Ezell’ of the $9,000.00 mortgage note in question,, appellant retained possession thereof pursuant to the agreement.
Council for appellant recognizes,, upon authority of Hibernia National Bank v. Succession of Gragard, 109 La. 677, 33 So. 728, Mente & Co. v. Levy, 160 La. 496,. 107 So. 318; and Lacoste v. Hickey, 203 La. 794, 14 So.2d 639, that as a general rule a. mortgage given as security for a specific-indebtedness is cancelled and extinguished upon payment of the obligation thereby secured. Nevertheless, counsel maintains that in the present case the terms of the Agreement, by the express consent of debt- or and creditor, breathed life into the mortgage in question upon payment of the specific debt by the debtor. Stated otherwise,, it is appellant’s position that the general indebtedness of Ezell to Southern constituted consideration for the mortgage in question-consequently the terms of the prior Agreement effectively pledged the mortgage note-held by appellant notwithstanding payment of the particular indebtedness for which' the mortgage was granted. Further,, counsel argues that since the Agreement was first in order of time, it should prevail and be given effect according to the will and intention of the contracting parties. In-this latter regard, counsel takes the position that parties are presumed to know, understand and intend the nature of obligations-undertaken by contracts expressed in un-equivocable terms as held in Commercial Credit Corporation v. Dowdy, La.App., 180 So.2d 826. Finally, it is argued that contracts which contravene no prohibitory law-must be enforced between the parties. Ogden v. Sanders, 12 Wheat. 213, 25 U.S. 213, 6 L.Ed. 606; Bill Garrett Leasing, Inc. v. *375 General Lumber & Supply Co., La.App., 164 So.2d 364, Molero v. California Company, La.App., 145 So.2d 602.
As correctly contended by counsel for appellee the law of this state is well settled to the effect that a mortgage executed as security for a specific indebtedness is extinguished and cancelled upon payment of the obligation and a subsequent reissue of the note cannot breathe life into the dead mortgage.
Germane to the issue under consideration is the following language appearing in Hibernia National Bank v. Succession of Gragard, 109 La. 677, 33 So. 728:
“ ‘When the mortgage is for a special debt, payment extinguishes debt and mortgage, and the subsequent (re)issue of the note will not revive the mortgage;’ citing Hill v. Hall, 4 Rob. 416, 418, and a number of other decisions. Succession of Phillips, 49 La.Ann. 1019, 1020, 22 So. 202; Pertuit v. Damare, 50 La.Ann. 893, 905, 24 So. 681.
The mortgage being extinguished, it is dead to all purposes. It cannot serve in any shape, or under any circumstances, as a live mortgage.”
Commenting upon the same subject matter, the Supreme Court in Lacoste v. Hickey, 203 La. 794, 14 So.2d 639, stated:
“With regard to mortgage notes, it appears to be well settled in the jurisprudence of this State that when such a note is given for a specific debt and payment of the debt is made and the note returned to the maker, both the note and the mortgage become extinguished and no subsequent reissue of the note can revive the mortgage. Mente & Co. v. Levy, 160 La. 496, 107 So. 318. In fact, this is the plain provision of the Civil Code. ‘Hence it happens, that in all cases where the principal debt is extinguished, the mortgage disappears with it.’ Civil Code, art. 3285.
It is otherwise when the mortgage note is not for a specific debt, but for future use, and in favor of any future holder. In such a case, the note may be reissued and used as collateral and the accessory right of mortgage preserved intact. Hollingsworth v. Ratcliff, 162 La. 281, 110 So. 422; Citizens’ Nat. Bank v. Loranger, 163 La. 868, 113 So. 129.”
Mente & Co. v. Levy, 160 La. 496, 107 So. 318, involved a factual situation identical with that in the case at bar. In the cited case a bank held a note given for a particular loan. Notwithstanding payment of the specific obligation, the creditor retained possession of the note with the consent of the debtor, holding same as security for other accounts due by the debtor. The holder of the note attempted to assert claims under the mortgage and in holding the obligation extinguished the court stated:
“The rule is well settled, at least in the jurisprudence of this state, that, when a mortgage is given for a specific debt to a particular creditor, payment of that debt extinguishes the mortgage and a reissue of the note will not revive or reinstate the mortgage.”
=t= * * * * *
“The principle recognized in the cases referred to is controlling in this case. The notes and mortgage were executed for a specific debt in favor of the bank and for no other. The $10,000 was a loan directly from the bank, and the notes and mortgage were given for that loan. That particular debt was paid to the bank by Levy, and thereafter the bank held the notes, not as securing or representing the debt for which they were given, but as collateral for another and different debt due by Levy to the bank.
By payment of the original debt the mortgage was extinguished, and could not be revived and substituted for a new debt by a reissue of the notes.”
Counsel for appellant seeks to obviate the effect of the rule announced in the *376 hereinabove quoted authorities by invoking the provisions of LSA-C.C. Article 3158 as amended by Act 290 of 1952, the pertinent portion of which reads as follows:
“* * * it) is further provided that whenever a pledge of any instrument or item of the kind listed in this article is made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, and the pledged instrument or item remains and has remained in the hands of the pledgee, the instrument or item may remain in pledge to the pledgee or, without withdrawal from the hands of the pledgee, be repledged to the pledgee to secure at any time renewal or renewals of the original loan or any part thereof or any new or additional loans, even though the original loan has been reduced or paid, up to the total limit which it was agreed should be secured by the pledge, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledger thereof, if made in good faith; and such renewals, additional loans and advances or other obligations or liabilities shall be secured by the collateral to the same extent as if they came into existence when the instrument or item was originally pledged and the pledge was made to secure them; * * ‡ »
Based on the foregoing codal authority counsel for appellant contends the issue of whether the note in question remained pledged following its payment concerns only the debtor and creditor involved.
We are in disagreement with the contentions of counsel for appellant. LSA-C.C. Articles 3284 and 3285 governing the efficacy of mortgages must also be taken-into consideration in cases of the present nature. The rationale of the rule an- ■ nounced and repeated in Hibernia National Bank v. Succession of Gragard, Lacoste v. Hickey and Mente & Co. v. Levy is found in the provisions of LSA-C.C. Articles 3284 and 3285, which declare as follows:
“Art. 3284. The mortgage is accessory to a principal obligation which it is. designed to strengthen, and of which it is to secure the execution.”
“Art. 3285. Consequently, it is essentially necessary to the existence of a. mortgage, that there shall be a principal debt to serve as a foundation for it.
Hence it happens, that in all cases-where the principal debt is extinguished,, the mortgage disappears with it.
‡ * * ❖ * ❖
While Article 3158, relied upon-by appellant does indeed authorize the-pledge and repledge of an instrument to-secure either an antecedent or subsequently incurred obligation, said statute is general' in nature and obviously applied to all instruments regardless of their intrinsic-character. However, we do not detect in. the article any language indicative of legislative intent to change the express rule relative to the efficacy of mortgages as declared in Articles 3284 and 3285 and the hereinabove cited decisions interpretative thereof. We can only conclude therefore that in amending Article 3158, the legislature of 1952 envisioned the pledge and repledge of valid, enforceable instruments and did not propose that the repledge of an instrument cancelled because of payment would by the act of repledge breathe-new life into an extinct security device. That a valid, outstanding, efficacious mortgage or other instrument may be pledged and repledged pursuant to the provisions of Article 3158 is not open to serious question. It is quite another thing, however, to say that a void, ineffectual instrument of absolutely no legal effect is miraculously *377 ■rendered efficacious by its repledge notwithstanding express legal authority to the ■ contrary. Although the owner of an effective instrument may pledge and repledge -it at will, the criteria by which its efficacy must be determined is the standard set 'by the law and jurisprudence of the state. Where the rules for determining an enforceable mortgage are expressly provided by the legislature, the parties may not deviate therefrom, especially if the rights of • third parties have intervened.
We have no hesitancy in holding that a valid, existing mortgage may be pledged and repledged for either an ante- ■ cedent or subsequently incurred obligation. A mortgage extinguished by operation of express law, however, cannot be revived by its subsequent pledge for a debt of any nature whatsoever. Once the mortgage has ceased to exist by operation of law, it is • dead for all purposes and all time. The parties are without power to revive its lifeless remains. Upon extinguishment by payment, the mortgage ceases to exist — there is nothing left to pledge or deal with in any legal manner. In the instant case the purported pledge of the note in question was .a vain and useless thing considering pay•ment of the specific debt owed appellant terminated the principal obligation foi which the mortgage was given and simul taneously extinguished the mortgage secured thereby.
The result would, of course, be ■otherwise were the note in question executed for future use in favor of a future holder or holders and pledged as security for either a previously existing or sub•sequently contracted obligation. A mort■gage of this character is not extinguished 'by payment of the debt which is secured thereby. Upon payment of an obligation so secured, the mortgage remains alive and valid and the note evidencing such a mortgage may be subsequently pledged by its maker as he sees fit. Lacoste v. Hickey, 203 La. 794, 14 So.2d 639.
There remains the contention of appellant that the terms of the agreement should be enforced because the parties, being free to contract at will, have specifically consented that any asset of Ezell held by appellant would be retained as security pursuant to the agreement of April 3, 1962. We have carefully considered Commercial Credit Corporation v. Dowdy, Ogden v. Sanders, Bill Garrett Leasing, Inc. v. General Lumber & Supply Co. and Molero v. California Company, supra, cited by counsel for appellant in support of his aforesaid contention, and find that none of said authorities are apposite to the case at bar. Our review of the cited cases discloses that each involved the interpretation of some clause, phrase or provision of a specific contract and none involved the legal efficacy of an agreement which must be determined according to a prescribed rule of law.
It follows that payment by Ezell to appellant of the specific obligation secured by the $9,000.00 note held by appellant extinguished the debt and cancelled the mortgage granted as security therefor. Consequently, appellant’s mortgage is dead and ineffectual and that of appellee, Baton Rouge Wood Products, Inc., is entitled to payment in preference and priority thereto out of the funds presently held by the Sheriff of East Baton Rouge Parish.
Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.