## No. 13,069.

R. M. WALMSLEY & CO. AND S. P. WALMSLEY vs. JULES A. RESWEBER; GEORGE W. SENTELL & CO., INTERVENORS.

### SYLLABUS.

A factor to whom a customer has delivered his negotiable notes to his own order and by him endorsed to secure him for advances made and to be made, subordinates his own rights under the notes and mortgage in favor of a second factor making advances to the same person, by transferring to him the notes with the maker's consent to be held as collateral security until the latter's advances made and to be made, are satisfied, at which time they are to be returned to the first holder.

The notes under such an agreement pass with their mortgage to the second factor and his mortgage rights are unaffected by the fact that the transfer of the notes is made after their maturity and that the accounts between the first factor and the common debtor may be subsequently settled and paid. (Levy vs. Ford, 41 Ann. 873.)

A junior mortgage creditor has no ground of complaint so long as his own rights are not primed for a larger amount than they were before.

In the case at bar the first factor at the time of such an agreement was bound towards the second as security for advances already made to his customer, and in consideration of this transfer he was released as such.

There were no equities existing at the date of the transfer.

#### ON REHEARING.

Holders of notes, secured by mortgage, transferred in good faith, are entitled to hold them between themselves and their transferrors. Third persons had not acquired an adverse right prior to their transfer.

As relates to the second series of notes, the condition being different, the right of the mortgage creditors, second in rank, is recognized as priming the mortgage first in rank to the extent that it was without consideration at the date that the mortgage creditors second in rank acquired their right.

A PPEAL from the Nineteenth Judicial District, Parish of St. Martin—*Voorhies, J.*

*Thomas J. Semmes, Charles H. Mouton, James Legendre* and *Edward Rightor,* for Plaintiffs, Appellants.

*Albert Voorhies* and *Martin & Voorhies,* for Intervenors, Appellees.

The opinion of the court was delivered by NICHOLLS, C. J.

On the rehearing, by BREAUX, J.

NICHOLLS, C. J. The plaintiffs alleged that on the 21st of March, 1892, defendant, Jules A. Resweber, being indebted unto Beauregard L. Fournet and Cesaire B. Delahoussaye in the sum of three thousand dollars, subscribed six promissory notes, each for the sum of five hundred dollars, and bearing eight per cent. *per annum* interest from date, until paid, and made payable to his own order and by him endorsed and delivered to the said Fournet and Delahoussaye, the first of said notes maturing on the 15th of October, 1892, the second on the 1st of November, 1892, the third on the 15th of November, 1892, the fourth on the 1st of December, 1892, the fifth on the 15th of December, 1892, and the sixth on the 1st of January, 1893; and that to fully secure the payment of said six notes, in capital and interest, on the 21st day of March, 1892, by act passed before Alex. V. Fournet, clerk, *ex officio* recorder of the parish of St. Martin, the defendant mortgaged and specially hypothecated in favor of said Beauregard L. Fournet and Cesaire B. Delahoussaye, and in favor of all future holders of said notes, certain described property in the parish of St. Martin.

That defendant, Jules A. Resweber, being indebted unto the firm of R. M. Walmsley & Co. in the sum of sixteen hundred and thirty-four dollars and ninety-seven cents, as shown by the note marked No. 1, which they annexed, upon which the said Beauregard L. Fournet and Cesaire B. Delahoussaye were sureties, and being also indebted unto Sylvester P. Walmsley, for which he, the said defendant, made,

subscribed and delivered his promissory note for three thousand dollars (with interest), which they annexed, on the third day of February, 1894, the said Beauregard L. Fournet and Cesaire B. Delahoussaye, to be released as surety on the note of sixteen hundred and thirty-four dollars, aforementioned, with the written authorization and consent of the said Resweber and in accordance with a verbal agreement between him and H. P. Fournet (who was then representing petitioners in this matter), transferred and delivered to petitioners in pledge the six mortgage notes as collateral security for the payment of the said note of sixteen hundred and thirty-four dollars and ninety-seven cents, and also to secure the payment of whatever indebtedness he, the said Resweber, owed or might owe to S. P. Walmsley, which indebtedness is evidenced by the aforesaid note of three thousand dollars, which they annexed.

That being the joint holders of the six first described mortgage notes transferred, given and delivered in pledge as collateral security for the payment of their respective claim against the said Resweber as averred, they had the right to enforce payment of the said six mortgage notes and to have the property mortgaged to secure their payment, seized and sold, the proceeds thereof to be applied to the payment of the indebtedness of Resweber to petitioners as averred and shown.

Petitioner S. P. Walmsley showed that the said J. A. Resweber was entitled to a credit of nine hundred and seventy-three dollars and twenty-two cents on his note of three thousand dollars annxed; said credit to be reckoned from the 7th of May, 1895, as shown by an account current statement and affidavit filed for reference.

In view of the premises they prayed that Resweber be cited; that judgment be rendered against Resweber in favor of petitioners jointly for the sum of three thousand dollars, represented by his mortgage notes, described and annexed, with interest, and that the property described and mortgaged, to secure the full and entire payment of the six notes, which petitioners hold and owned in pledge as collateral, as averred, be seized and sold, and that the proceeds thereof be first applied to the payment of the indebtedness of A. Resweber to petitioners, as averred and shown.

They annexed to their petition the act of mortgage referred to.

The defendant answered. He averred that during a period of several years, at about the time mentioned by plaintiffs in their petition, he was and remained in business with them on open accounts, sometimes aggregating yearly amounts as much as forty thousand dollars.

That of these dealings and transactions, which continued subsequently to furnishing the notes sued on in this case and which consisted mainly in their advancing to him money for the purchase of cotton by him and his consigning and shipping that cotton to them, no liquidation or settlement had yet been made. That during said period he purchased and shipped to said plaintiffs a large quantity of produce and cotton, which, as brokers and commission merchants, they sold for his account; the proceeds whereof, as understood and agreed, were to be applied first to the payment of respondent's open account, and, accordingly, if any balance remained, to the extinction of the notes sued upon and at that time regularly held and owned by plaintiffs. That the cotton and other produce so consigned by him to them, and by them sold as aforesaid, realized more than sufficient to satisfy his indebtedness on open account with them, and if not fully, at least, enough to meet perhaps three-fourths of the debt evidenced by said notes.

Wherefore, he denied all and singular the allegations set forth in plaintiff's petition and pleaded payment of the debt sued on in the premises.

He prayed that their demand against him be rejected.

George W. Sentell & Co. intervened in the suit.

They alleged that they were mortgage creditors of Resweber in the sum of four thousand four hundred and forty-five dollars and sixty-five cents ($4445.65), as per act of mortgage recorded in the recorder's office.

They especially denied that Resweber was indebted to any one upon the six notes of five hundred dollars each, sued upon. They averred that the said notes were given by him to Fournet and Delahoussaye merely to protect himself against the claims of petitioners and other creditors; that it was given without consideration and for a fraudulent purpose, and were, therefore, null and void. That after said notes were executed and their maturities arrived, they were turned over and delivered to Resweber. That long after their maturities and after Resweber became involved with R. M. Walmsley & Co. he returned the six notes of five hundred dollars each to B. L. Fournet and C. B. Delahoussaye, who were the representatives of R. M. Walmsley & Co., and they turned over those notes to the plaintiffs in this suit.

Intervenors averred that the only object of Fournet and Delahoussaye was to assist Resweber in giving an unfair preference to plaintiffs

over the other mortgage creditors for payment of their ordinary claims. That having once taken up those six notes from Fournet and Delahoussaye, Resweber could not again give them life and transfer them to plaintiffs. That Fournet and Delahoussaye were not the sureties of J. A. Resweber, but were simply endorsers, and could not be made to pay an obligation past due, without protest. That the whole transaction was fraudulent, and was a plan concocted to give a preference to plaintiffs for the payment of their ordinary claims, against the privileged claim of petitioners.

They prayed that their intervention be maintained; that the transfer of said six notes be decreed null and void and of no effect; that the pretended mortgage securing them be cancelled and erased and that plaintiffs' suit be dismissed.

The widow in community and heirs of George W. Sentell intervened, adopting the allegations and prayer of George W. Sentell & Co. The plaintiffs answered the intervention, pleading the general issue, and specially denying the charge of fraud therein made. The District Court rendered judgment in favor of the plaintiffs againts the defendant for three thousand dollars, with interest from judicial demand, subject to a credit of nine hundred and seventy-three dollars and twenty-two cents, as shown by account current settlement and affidavit filed with plaintiffs' petition for reference. It decreed further, that the six notes of five hundred dollars each, executed by Resweber, made payable to his own order and by him endorsed and delivered to Fournet and Delahoussaye and fully described in plaintiff's petition, which notes were subsequently transferred, given and delivered in pledge as collaterals to plaintiffs by Fournet and Delahoussaye, be decreed to be extinguished for the reasons given by the court.

.It further decreed that the mortgage given to secure said six notes be annulled and of no effect in so far as the junior mortgage of intervenors is concerned, which took precedence over it. It further ordered that the intervention of G. W. Sentell et als. be maintained to that extent, and that the right to enforce their mortgage claim against the said Jules A. Resweber be specially reserved to said intervenor.

Plaintiffs appealed.

## OPINION.

On the 21st of March, 1892, an act of mortgage was executed by the defendant before A. V. Fournet, notary public for the parish of St.

Martin, to secure the payment of six promissory notes of five hundred dollars each, with interest, maturing at intervals of fifteen days, commencing the 15th of October, 1892, and ending the 1st of January, 1893.

The notes were drawn by Resweber, the mortgagor, to his own order, and were by him endorsed, and the mortgage was granted to Fournet and Delahoussaye and in favor of all future holders of said notes. The recitals touching the note and mortgage as given in the act were, that Resweber declared that he was indebted unto Beauregard L. Fournet and Cesaire B. Delahoussaye in the sum of three thousand dollars, for the reimbursement of which he made and subscribed six promissory notes (describing them) and delivered the same to the said Fournet and Delahoussaye, and to secure the payment of said six notes at maturity, a mortgage in favor of said Fournet and Delahoussaye (present and accepting the same), and of all future holder or holders of said notes, consented a mortgage upon a certain property described in the act, the said premises to remain thus mortgaged until final payment of the six notes.

The evidence shows that at the date of this mortgage, Resweber was indebted in point of fact to the mortgagees only for the sum of nine hundred and seventy-five dollars; that the parties had held and intended to continue to hold business relations with each other; that the debt of nine hundred and seventy-five dollars, then existing, was for advances already made, and the notes and mortgages were given to secure those advances and others expected to be made.

Although the act of mortgage declared that the six notes were delivered at the time of its execution to Fournet and Delahoussaye, the truth was that they received at that time only two of the notes; the mortgagor retaining possession of the four others. It appears that Resweber had for a number of years had business relations also with the firm of R. M. Walmsley & Co., and on the 18th of March, 1893, he made, subscribed, endorsed and delivered to S. P. Walmsley, the successor in business of Walmsley & Co., his promissory note for sixteen hundred and thirty-four dollars and ninety-seven cents, payable on the 1st of December, 1895, to the order of R. W. Walmsley & Co.

Fournet and Delahoussaye signed this note as sureties, whereupon Resweber delivered to the latter two more of the mortgage notes. This note of sixteen hundred and thirty-four dollars was intended to secure advances to be made to Resweber by Walmsley during the season of 1893 and 1894.

On February 3rd, 1894, Fournet and Delahoussaye wrote to S. P. Walmsley the following letter:

"In order to secure the claim of Messrs. R. M. Walmsley & Co. against Mr. Resweber, represented by his note for about sixteen hundred and thirty dollars, endorsed by us, and also to secure your claim against him, we have, at his request and with his consent, forwarded to you by Mr. H. P. Fournet, as collateral security, the mortgage notes of the said J. A. Resweber, for the sum of three thousand dollars, in six instalments, each for the sum of five hundred dollars, due Oct. 15, Nov. 1, Nov. 15, Dec. 1, Dec. 15, '92, and Jan. 1, '93, as per act in our favor, executed before A. V. Fournet, clerk, *ex officio* recorder and notary public, in the year 1892, and duly recorded in the office of the recorder of mortgages for the parish of St. Martin, which said notes were held by us against the said Resweber to secure our claim against him.

"We make this transfer as a matter of accommodation, to both you and him. In consideration of this transfer, our endorsement on his note due R. M. Walmsley & Co. is to be annulled and of no effect against us, and the understanding had between you and Mr. H. P. Fournet in regard thereto is hereby approved by us. You will therefore hold said note bearing our endorsement until you shall have effected a new settlement with Mr. Resweber, and when his entire indebtedness shall have been paid, you will please return to us his said mortgage notes to secure his indebtedness to us."

On February 3rd, 1894, Resweber wrote the following letter to S. P. Walmsley:

"Dear Sir:—This is to say that I have consented to the transfer to you by Messrs. Fournet and Delahoussaye of the six several mortgage notes which were handed to you a few days ago, by Mr. H. P. Fournet, said notes being for the sum of five hundred dollars each and secured by mortgage on my property, as per act before A. V. Fournet, clerk, and *ex officio* notary, in favor of B. L. Fournet and C. B. Delahoussaye, in 1892, which said notes you are to hold as collateral security to secure whatever indebtedness I may owe R. M. Walmsley & Co. and S. P. Walmsley, and then transfer them back to the said Fournet and Delahoussaye, being pleased that Mr. H. P. Fournet has explained the situation of my affairs to your satisfaction and with the assurance that I may be able to pay you within the next ninety days (90) about $1600 or $1700 to reduce my debt."

The arrangement referred to in this correspondence having been agreed to by Resweber, Fournet and Delahoussaye and Walmsley, the six mortgage notes of the former were turned over by Fournet and Delahoussaye, in February, 1894, to H. P. Fournet, plaintiff's agent in St. Martinsville, and at once transmitted by him to Walmsley.

The exact situation of the accounts between Resweber, Fournet and Delahoussaye at that date is now shown, but they had not been closed.

Resweber had retained possession of the last four notes to be delivered to Fournet and Delahoussaye as they should make advances to him. Two of them were delivered to them afterwards, when they signed the $1634 note as sureties, and the last two were delivered to them the day before they themselves delivered all of them to H. P. Fournet for transmittal to Walmsley. B. L. Fournet testified that all the advances made by them to Resweber were paid to them after the transfer of the mortgage notes to the plaintiffs.

The fact of Resweber's indebtedness to the plaintiffs for the amount claimed in their petition is not contested, but it is claimed that the indebtedness is not secured by mortgage. We understand that intervenors have abandoned their charge of fraud and simulation, but if they have not there is nothing in the record which would in the least sustain it. Fournet and Delahoussaye were not endorsers, but surety, on the note for sixteen hundred and thirty-four dollars; it was made payable to the order of R. M. Walmsley & Co. and was delivered to them with Fournet's and Delahoussaye's signatures upon the back of the note.

It is well settled that parties signing in that way do so as sureties. They were at no time agents of the plaintiffs. There can be no question as to the fact that these mortgage notes went into the hands of the Walmsleys as collateral security for Resweber's indebtedness to them, with the consent of all the parties concerned. When intervenors accepted their mortgare the records showed it was primed by the three thousand dollar mortgage granted to Fournet and Delahoussaye. There were no equities existing against the six notes when received by plaintiffs as collateral at that time. If such was the fact, it was immaterial that the notes should have been past their maturities when so accepted as collateral. It is not pretended that Resweber has ever paid the notes to the Walmsleys, and their payment to anybody else since their transfer would have been totally unauthorized and could not bind them.

Resweber was estopped from making such payment to Fournet and Del-ahoussaye after their transfer to plaintiffs.

The right of Fournet and Delahoussaye and Resweber by joint con-sent to turn over these mortgage notes to the plaintiffs under the cir-cumstances as collateral security cannot be doubted. Levy vs. Ford, 41 Ann. 873; Mechanics' and Traders' Insurance Company vs. Powell, 27 Ann. 647, 648; D'Meza vs. Generis, 22 Ann. 286; Brewer vs. Gay, 24 Ann. 37; Gardner vs. Maxwell, 27 Ann. 561. We do not find in the record any evidence of any reissue of these notes by the maker. When Fournet and Delahoussaye transferred them to the plaintiffs they trans-ferred to them whatever claim or right the security was understood by the parties to represent. 47 N. W. 271; 40 Pac. 1049.

The judgment appealed from is, in our opinion, erroneous and it must be reversed.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiffs, R. M. Walmsley, John J. Barr and Sylvester P. Walmsley, composing the commercial firm of R. M. Walmsley & Co., and Sylvester P. Walmsley, plaintiffs herein, do have judgment against and recover from the defendant, Jules A. Resweber, the sum of three thousand dollars represented by the six mortgage notes described in and annexed to their petition herein, with eight *per cent. per annum* interest thereon, from the 21st of March, 1892, subject to a credit of nine hundred and seventy-three dollars and twenty-two cents, on the 7th of May, 1895, until paid, and that the property described in their petition and mort-gaged to secure the full and entire payment of the six notes which plaintiffs hold and own in pledge as collateral, as alleged in their peti-tion, be seized and sold, and the proceeds thereof be first applied to the payment of the indebtedness of Jules A. Resweber to the plaintiffs, as alleged and shown in their petition. Costs of both courts on the inter-vention to be borne by the intervenors.

## On Rehearing.

BREAUX, J. An elaborately prepared brief is presented by the plain-tiffs for our consideration, in support of our decree. Intervenors, on the other hand, in an earnest brief, argue that, in the main, our decree is erroneous and should be reversed and set aside in part, at least. We deem it necessary to reconsider the questions presented.

Before taking up these questions for decision, we will dispose of a matter we no longer consider a part of the controversy between plaintiffs and intervenors, for the reason that counsel for the intervenors, to some extent at least, recognize the legality of our decree. In the first brief filed by counsel for intervenors, after our decision had been handed down, said counsel concede that if plaintiffs held as transferees in good faith before maturity, the notes are not subject to the equities and claims set forth in their pleadings. They admit that two of the notes were transferred before maturity *by* Fournet and Delahoussaye, first holders, *to* Walmsley & Co., second holders.

In the second brief, counsel declare that if plaintiff held before maturity in good faith, no inquiry could be made with the view of defeating their rights, and they then aver emphatically that two of their notes of five hundred dollars each were transferred by Fournet and Delahoussaye, original transferrees, before maturity, and that this firm was the holder in good faith before maturity.

The position of intervenors regarding these two notes leaves very little to decide. As to these two notes, they are committed to the correctness of commercial law, under which it is held, "if the first endorsee has a right of action by being a *bona fide* transferee without notice before maturity, he could transfer a perfect title as well after as prior to the maturity of the note." It follows that, as to these two notes, our decree must remain undisturbed.

We take up the remaining questions arising out of the transfer of four of these notes after maturity, also secured by mortgage. As to those four notes, the intervenors who hold the mortgages second in rank, who are third persons, have the right to avail themselves of any defense against the plaintiffs' claim. They, as relates to their mortgage, stand in the shoes of their common mortgagor, Resweber, and it follows that they have a right of action to compel plaintiffs to limit their claim to the amount properly due them. Plaintiffs, who hold from Fournet and Delahoussaye, cannot sustain their right to a claim of more than Fournet and Delahoussaye had at the time that they transferred or attempted to transfer their mortgage to plaintiffs. No one can transfer greater right than he himself has. *Nemo plus juris ad alienum transferre potest, quam ipse habet.* (Coke, Litt 309 b) Dig. 50, 17, 120. The transferee of a mortgage has no greater right than his transferrer had at the date of the transfer. He only acquires the rights of the mortgagees. Schmidt vs. Frey, 8 Rob. 435. We repeat, plaintiffs can only acquire

such rights as their transferrer had. The original mortgagees, Fournet and Delahoussaye, unquestionably were creditors of the mortgagor for a small amount at the date the mortgage was executed and at the time they transferred their claim to plaintiffs. To that extent they, Walmsley & Co., are subrogated to the rights of those mortgagees.

In order to make the position clear, we state here that on the 25th of March, 1892, Jules A. Resweber executed the act of mortgage on which Walmsley & Co. brought this suit. On the 29th of June of the same year, Jules A. Resweber executed an act of mortgage on which Sentell & Co. rest their claim.

In 1894, the first mortgage, that on which Walmsley & Co. brought their suit, was transferred to them, Walmsley & Co., by Fournet and Delahoussaye. It results that the Walmsley mortgage only had consideration (save as to the amounts admitted to be due by Resweber and Fournet & Co.) after the Sentell mortgage had been executed. Moreover, as to the consideration, the Walmsley mortgage contains the declaration that it was executed to secure the payment of the amount due at the time the mortgage was executed, that is the 25th of March, 1892. A mortgage containing such a declaration, plaintiffs contend, secures as against a third person *advances to be made*. We do not find it possible to sustain that view. A mortgage may be executed for any debt *pour autwri*, conditional, and even for future debt, but it must be so stipulated. Instead of such stipulation, Resweber retained four of the notes in his possession, and while he had them in his possession, he executed a mortgage in favor of Sentell & Co., intervenors. After he had executed this mortgage in favor of Sentell & Co., it was no longer possible for him to give validity to a mortgage to the prejudice of third persons. To illustrate, A executes a mortgage in favor of B to secure the payment of six notes of five hundred dollars each. He delivers two of the notes to B and retains the four others in his own possession. Some time after, he executes a mortgage in favor of C. He cannot, after he has executed this mortgage in favor of C, place the four notes in circulation to the prejudice of C's mortgage. This would be giving effect to a potestative condition in a manner the law never contemplated as possible. "Every obligation is null that has been contracted on a potestative condition on the part of him who binds himself." C. C. 2034. We think that the following, which we translate from Pothier, has direct bearing: "In that case, that is in case the mortgage creditor consents to a transfer of his mortgage as a security

for another debt to another creditor, the first creditor becomes the last, but he becomes the last for the reason that the preference that he accords to the transference must not interfere with the rights of intermediate mortgagees." (Dupin.) Oeuvres de Pothier, Vol. 10, p. 849. The following is the principle laid down in one of the articles of the Civil Code (3293) : "But the right of mortgage, in this case, shall only be realized in so far as the promise shall be carried into effect by the person making it"—that is, so far as the transferring mortgagee has acquired a right.

Here let us concede for a moment that the original mortgagee had promised to make advances to the mortgagor, although the act of mortgage is absolutely silent on that point. That right was never transferred to the plaintiffs because neither the agreement between the plaintiffs and their transferrers nor the act of mortgage contains any reference to any future obligation of the mortgagor growing out of the advances with which he was to be favored.

There may have been verbal stipulations in that connection between the original mortgagees and the mortgagor, but nothing is in writing on the subject. If there were verbal stipulations, they cannot be of any effect, for they were not made in compliance with the articles of the Code requiring written evidence of a mortgage. C. C. 3305. The stipulations of the act of mortgage in question do not refer to any advances to be made to any one. It is absolutely silent on that point. In Flower and King vs. O'Bannon, 43 Ann. 1047, this court said: "The mortgage was not given to secure advances generally or to secure any resulting balance of account without limitation as to time. Its terms explicitly declare that it is given to secure the sum of $2500 for money advanced and acceptances made and to be made during the present year. Plaintiffs seem to consider that the present year means the year running from the date of the mortgage, but such is not a natural construction of the words in their ordinary use, which obviously suggest the year 1887; and this is confirmed by the fact that the notes given to represent the debt matured respectively on December 1st, 1887, and January 1st, 1888.

"We cannot see our way clear to holding that this mortgage was intended to secure or did secure any advances or acceptances not made during the year 1887 or any balance of account beyond that existing on the last day of the year."

We must look for the obligations of the mortgage in the act itself;

to extend them beyond the plain terms of the act, on evidence such as that here suggested, would be to create a mortgage by parol or by implication, in violation of the articles of the Code which are cited *supra*.

True it is that between mortgagor and mortgagee, a mortgage may be executed for advances to be made and it may be that as between them, although the mortgage does not contain the stipulation that it should regarding future advances, it may yet be construed to embrace them as a consideration; but as between a transferee of a mortgage and a third person, the former cannot establish by parol a consideration not even hinted at in the act of mortgage or in any writing.

It is ordered, adjudged, and decreed that the judgment appealed from be affirmed to the extent that it decrees judgment in favor of plaintiffs for the sum of three thousand dollars.

It is further ordered, adjudged, and decreed that it be amended and that instead of interest as heretofore allowed, plaintiffs recover interest thereon at the rate of eight *per cent per annum* from December 15th, 1894, subject to a credit of nine hundred and seventy-three and 22-100 dollars.

It is further ordered, adjudged, and decreed that the mortgage executed by J. A. Résweber in favor of Fournet and Delahoussaye on the 21st day of February, 1892, and afterwards transferred in pledge by Fournet and Delahoussaye to R. M. Walmsley & Co., is a valid. mortgage to the extent that it secures the payment of the two first notes and the costs of the District Court, and it is further ordered and decreed that the property described and mortgaged to secure the full and entire payment of the said two notes, interest, and costs be seized and sold, and that the proceeds thereof (to the extent necessary) be applied to the payment of the said two notes, interest, and costs.

It is further ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed in so far as it does not recognize plaintiffs'' right to the said two notes and mortgage, and in all other respects that it does not conform with this judgment.

It is further ordered, adjudged, and decreed that the mortgage executed to secure the four other notes described in the act of mortgage is of no effect against the mortgage of intervenors which primes, under this decree, the mortgage of Walmsley & Co.; but between Walmsley & Co. and Resweber, the former's claim and mortgage remain unchanged.

It is further ordered that the intervention of G. W. Sentell & Co. is sustained to the extent that they claim preference to the amount rep-

resented by the four last notes. Their rights under their mortgage are reserved to them, to-wit, the intervenors.

It is further ordered that defendant pay the costs of intervention in this case be reinstated only to the extent that it recognizes plaintiffs' right to recover on the mortgage notes to the amount of one thousand dollars, interest and costs. In other respects, it is not reinstated, except as herein mentioned.

It is further ordered, adjudged, and decreed that our former decree in the lower court and that intervenors pay the costs of appeal.

MONROE, J., and PROVOSTY, J., concur inthe decree; PROVOSTY, J., handing down a separate opinion.

NICHOLLS, C. J., and BLANCHARD, J., dissented in part; BLANCHARD, J., handing down a separate opinion, in which NICHOLLS, C. J., concurs.