HAMITER, Justice.
Certain immovable property belonging to Emile G. Ezell was sold at a judicial sale as the result of executory proceedings initiated by Baton Rouge Wood Products, Inc. (hereafter referred to as Wood Products), and based on a recorded mortgage held by it. The funds derived from the sale were more than sufficient to satisfy the obligations secured by other recorded encumbrances which ranked first and second.
The issue now presented relates only to the proper distribution of the proceeds as between the respective holders of the two succeeding recorded mortgages, they being Southern Pipe and Supply Company of Mississippi, Inc. (hereafter referred to as Southern), and Wood Products.
The trial court ruled that Southern’s mortgage had been cancelled by payment of the debt which the encumbrance specifically and solely secured. Accordingly, it ordered payment by preference out of the proceeds of the sale to Wood Products.
The judgment was affirmed on appeal (194 So.2d. 372), and we granted certiorari at the instance of Southern (250 La. 266, 195 So.2d 146).
The note and mortgage held by Southern were executed by Ezell on October 5, 1962. The note, for $9000, was made payable to the order of that company; and such payee was named as mortgagee in the mortgage. The note further recited that it was secured by a pledge agreement of the same date, the agreement showing that Ezell had pledged to Southern as collateral four other mortgage notes of third parties. The $9000 obligation was subsequently paid, but South! ern retained possession of the note and mortgage executed by Ezell.
It appears that Southern and Ezell had (for a number of years) carried on a business relationship, in the course of which Southern had extended credit to Ezell and also furnished direct loans to him. On October 5, 1962 Southern made a direct cash loan to Ezell in the amount of $9000, and in connection therewith the note and mortgage described above were executed.
The record convinces us beyond any doubt that such note and mortgage represented the specific $9000 indebtedness incurred at the time the transaction took place, and that this obligation was later oaid. (Indeed, this is virtually conceded by Southern.) This being true, Southern’s mortgage expired upon payment of the obli *374 gation. The numerous cases cited in the Court of Appeal opinion amply support this conclusion. (See also Revised Civil Code Article 3285.)
Southern recognizes the authority of the decisions just referred to; but it argues that by virtue of a prior “Collateral Pledge Agreement”, entered into between it and Ezell on April 3, 1962, the instant mortgage was kept alive to secure all other obligations due it by Ezell. That agreement is described by the Court of Appeal as follows : “The agreement * * * in substance recites Ezell’s desire to carry on a general business relationship with appellant whereby the latter will from time to time sell materials on credit and make cash advances to the former. To secure these proposed transactions Ezell expressly pledged to appellant any and all funds or assets belonging to him and held by appellant as security for all such credit sales and cash advances. The agreement provides a limitation upon the arrangement in the sum of $30,000.00. * * * ”
Further, the agreement provided that such securities, which are described in an annexed document, shall be pledged to Southern to be held as security for any and all debts, present or future, owed by Ezell to Southern.
We fully agree with Southern that if the mortgage note in question had been pledged as collateral to secure the $9000 indebtedness then payment of such obligation would not extinguish the mortgage; and, as a consequence, the note and mortgage might later be used as security for other obligations (past or future). But, as we have said, that result does not obtain here because the mortgage note was given for, and represented, a specific indebtedness.
The distinction between the two situations is particularly pointed out in the decisions relied on by Southern itself. Hollingsworth v. Ratcliff et al., 162 La. 281, 110 So. 442, Citizens’ National Bank of Hammond v. Loranger et al., 163 La. 868, 113 So. 129 and especially Lampton Reid and Company, Inc. v. Fortenberry et al., La.App., 168 So. 36. Each of those cases clearly shows that the mortgage note therein was given in pledge as security for another obligation; it did not represent the direct obligation, as here.
We concur in the conclusion of the Court of Appeal that the prior collateral agreement could not change the legal effect anent the mortgage when the direct and specific debt evidenced by the note was paid. Assuming that the parties intended that the note and mortgage could thereafter be held as collateral for other obligations, following payment of the principal indebtedness, such intention could not alter the express legal authority to the contrary. In virtually all of the cases where this issue arose it had been the intention of the parties to continue the effectiveness of the mortgage; but such intention, as against *376 legal authority to the contrary, could not produce such a result. Under the law, once the direct and specific loan had been repaid the mortgage securing it expired; and no intention of the parties could continue its efficacy as security for other obligations.
Nevertheless, we do not believe that the issuance of the note and mortgage in question came within the contemplation of that provision of the general collateral agreement of April 3, 1962 (relied on principally by Southern) whereby it was recited that possession by Southern of “any security or property of the undersigned [Ezell] * * * shall conclusively evidence the fact that such property has been delivered in accordance with the agreement * * The mortgage note involved here was no.t security for an obligation; it represented and evidenced a direct and specific indebtedness. Nor, as contended by Southern, does the.use of the general word “property” affect this result. Since the note represented the obligation itself, or was evidence thereof, it was not the property of Ezell (the “undersigned” debtor). It, along with the securing mortgage, belonged to Southern.
In this connection we think that the following observations of the trial judge are pertinent: “There has been offered in evidence, first, a pledge agreement dated April 3, 1962, under which it might conceivably be held that a note of $9000 given by Ezell to Southern Pipe six months later would remain pledged to Southern Pipe regardless-of subsequent payments by Ezell on the-note. However, in my opinion, the facts, shown by the record here do not justify any such conclusion. The $9000 note in question shows on its face that it was secured' by a pledge agreement of even date therewith. The pledge agreement is in evidence- and shows that as security for the payment of this $9000 note Ezell pledged to Southern Pipe four collateral mortgage notes, as-shown by Exhibit A attached to the pledge agreement of October 5, 1962. It appears,, therefore, that instead of the $9000 note being one that might be said to serve as a pledge to Southern Pipe, that note itself was-secured by a pledge of the four collateral mortgage notes just mentioned.” (Emphasis ours)
. Southern urges that the Court of Appeal erred in observing in effect that a note or mortgage must indicate on the face thereof that it is being issued as collateral and that, therefore, proof of this fact cannot be made by parole. Even if this were a correct interpretation of the court’s observation, it would not affect the outcome of the decision herein inasmuch as the court found that the instant note was not issued as collateral but was granted for a specific debt which had been paid.
True, the court did not dwell on this finding, nor discuss the evidence leading to its-conclusion; but apparently this was because such finding was warranted by an admis *378 sion made by Southern. Thus, in its brief to the Court of Appeal it asserted: “ * * * The open security agreement of April 3, 1962 clearly refers to security for present and future indebtedness of Mr. Ezell not to exceed $30,000.00 whereas the October 5, 1962 agreement concerns itself with a particular $9,000.00 loan made to Mr. Ezell. * * * ” (Emphasis ours)
However, the mentioned observation complained of does not require the use of any particular language. It simply says that if the mortgage note in question were “executed for future use in favor of a future holder or holders and pledged as security for either a previously existing or subsequently contracted obligation” the mortgage would not be extinguished by payment of the debt. This is virtually the identical language used by the court in numerous cases involving this issue, including all of those relied on by Southern. The court does not say that the words “for a future holder or holders” must be used. Other language carrying the same import would be sufficient, i. e., if the note is payable “to the order” of an individual (as here), or if it is payable to the maker himself and endorsed in blank. The important thing is that such note be pledged as security, and not be given to represent a specific indebtedness.
We conclude, therefore, that the Court of Appeal correctly found that the mortgage note in question had been issued for a specific debt, not as security for either a previously existing or subsequently contracted obligation. Consequently, its holding that the mortgage became extinguished on payment of the debt was proper.
For the reasons assigned the judgments: of the district court and of the Court of Appeal are affirmed. Southern shall pay all costs incurred in the litigation between it and Wood Products.
McCALEB, J., dissents with written reasons.
SUMMERS, J., dissents and assigns, reasons.