LeSUEUR, Judge.
Three notes are at bar:
(a) A $10,000.00 note in favor of inter-venor, First National Life Insurance Company, secured by a first mortgage dated February 14, 1963 upon an improved lot in Jefferson Parish;
(b) A $3,000.00 note dated December 20, 1966 also in favor of First National Life Insurance Company, which recites that it is secured by the 1963 mortgage; and
(c) A note and second mortgage dated December 19, 1968 in favor of plaintiff, Thrift Funds Canal, Inc.
The sole issue raised lies in the ranking of the 1966 and 1968 notes. The trial court gave priority to the 1966 $3,000.00 note and Thrift Funds has appealed.
Several facts are both clear and relevant. The original 1963 mortgage was not extinguished by payment in full of the principal obligation prior to the issuance of the 1966 note. On the other hand, while there is some language referring to other indebtedness (“ * * * and all other indebtedness secured hereby * * * ” in a confession of judgment on the last page of the mortgage, the mortgage is drawn in the standard form (printed) for a conventional mortgage, refers solely to the single $10,000.00 note which it secures, contains no clause whatsoever reciting that it is made to secure future advances and recites no obligations in favor of future holders, etc.
There is moreover no doubt that our law can and does provide for a mortgage to secure future advances. The question at hand is more specific and calls only for a determination of whether the 1963 “conventional” mortgage qualifies as such an instrument notwithstanding the lack of express provision for future use.
There is early authority supporting both sides of the issue. In Pickersgill & Co. v. Brown, 7 La.Ann. 297 (1852), the Supreme Court ruled:

“Such being the circumstances of the case, the legal propositions, presented by the parties, stand thus: Your mortgages, say the plaintiffs, purport to be for loans and advances already made. They must be confined, therefore, to these existing loans and advances. Your advances posterior to 12th May, 1842, are unprotected by mortgage. On the other hand, the defendant argues, that as the mortgages and judgment were, in fact, taken not only as securities for existing advances, but such advances as might thereafter be made, so that the defendant should be covered in account current up to the amount and interest therein expressed, his right to avail himself of them, as such securities, is not impaired by the language in which the securities were expressed, and extends as well to the subsequent as to the antecedent advances.
“These propositions involve two questions of law: can a mortgage, under our hypothecary system, be given to secure debts having no legal existence at the date of the mortgage? If so, is it essential, as regards third persons, that the applicability of the mortgages to future debts, should be expressed on its face, or may it be created, in the form of a security, for an obligation described as actually existing?
“Upon both these points, our opinion is clearly with the defendant. * * *
“If, therefore, these mortgages had been made in express terms to secure such balance of account as was then due, and such advances as might thereafter be made in account current, up to a fixed amount, it seems to us clear, that the defendant would be protected by them. But the plaintiffs insist upon the strict words of those contracts; denounce them as false and fraudulent simulations, in declaring that they are given for *255 loans already made; and contend, that as such, the mortgages are inoperative against them.
“That any fraud was intended by taking the mortgages in this form, is unsupported by the evidence, and cannot be justly inferred from the surrounding circumstances. We consider the case, upon this point, as presenting a naked question of law, upon which the authorities are clearly in favor of the defendant. * * ”
Some sixty (60) years later, however, the Supreme Court took a different look at the question, holding in Walmsley v. Resweber, 105 La. 522, 30 So. 5 (1899-1901), on rehearing:
“ * * * Moreover, as to the consideration, the Walmsley mortgage contains the declaration that it was executed to secure the payment of the amount due at the time the mortgage was executed; that • is, the 25th of March, 1892. A mortgage containing such a declaration, plaintiffs contend, secures, as against a third person, advances to be made. We do not find it possible to sustain that view. A mortgage may be executed for any debt pour autrui conditional, and even for future debt, but it must be so stipulated. * * *
“ * * * neither the agreement between the plaintiffs and their transferrors nor the act of mortgage contain any reference to any future obligation of the mortgagor growing out of the advances with which he was to be favored. There may have been verbal stipulations in that connection between the original mortgagees and the mortgagor, but nothing is in writing on the subject. If there were verbal stipulations, they cannot be of any effect, for they were not made in compliance with the articles of the Code requiring written evidence of a mortgage. Civ.Code, art. 3305. The stipulations of the act of mortgage in question do not refer to any advances to be made to any one. It is absolutely silent on that point. In Flower v. O’Bannon, 43 La.Ann. [1041,] 1047, 10 South. 376, this court said: ‘The mortgage was not given to secure advances generally, or to secure any resulting balance of account without limitation as to time. Its terms explicitly declare that it is given to secure the sum of $2,500 for money advanced and acceptances made and to be made during the present year. Plaintiffs seem to consider that the present year means the year running from the date of the mortgage, but such is not a natural construction of the words in their ordinary use, which obviously suggest the year 1887; and this is confirmed by the fact that the notes given to represent the debt matured respectively on December 1, 1887, and January 1, 1888. We cannot see our way clear to holding that this mortgage was intended to secure, or did secure, any advances or acceptances not made during the year 1887, or any balance of account beyond that existing on the last day of the year.’ We must look for the obligations of the mortgage in the act itself. To extend them beyond the plain terms of the act on evidence such as that here suggested would be to create a mortgage by parol or by implication, in violation of the articles of the Code which are cited supra. True it is that between mortgagor and mortgagee a mortgage may be executed for advances to be made, and it may be that, as between them, although the mortgage does not contain the stipulation that it should regarding future advances, it may yet be construed to embrace them as a consideration; but, as between a transferee of a mortgage and a third person, the former cannot establish by parol a consideration not even hinted at in the act of mortgage, or in any writing. * * * ”
Each of these decisions has been distinguished by the party favoring the other. In our view, while there are certain distinctions in either case, both apply to the present question.
*256 As between them, this court is constrained to adopt the thinking of Walmsley v. Resweber, supra. In the first place, it is the later of the two decisions. In the second, we note that in similar circumstances the Third Circuit in Scallan v. Simmesport State Bank, La.App., 129 So.2d 49 (3rd Cir. 1961) while holding that a mortgage was sufficient for future advances, was careful to point out that it was drawn in an appropriate form.
More importantly, we must accept the premise that mortgages are legislatively created and governed. In LSA-R.S. 6:767 and 767.1, the Legislature, in 1954 and 1964, respectively, passed statutes providing that, assuming certain requisites were met, a “conventional” first mortgage in favor of a homestead and building and loan association would secure future advances. Surely, if the Legislature had it in its view of mortgage that conventional mortgages enjoyed that effect at large, there is no sense behind these statutes. LSA-R.S. 9:5301, et seq. may also be construed as evidence of similar intent.
Finally, the Walmsley v. Resweber, supra, rule makes better sense. Mortgages are strictissimi juris. They are not to be extended or modified by analogy or a fine turn of language. Nothing less will satisfy the security of the public records, ownership of property, and the process of finance.
For these reasons, the judgment appealed is affirmed in part and reversed in part. Judgment is hereby reversed so as to recognize the privilege of the plaintiff in priority to any sums due on the 1966 note. Insofar as the judgment recognizes the first privilege of First National as to all sums due on the 1963 note, it is affirmed. The amounts due on the 1963 and 1966 notes are fixed, pursuant to First National’s accounts, at $6,736.92 and $2,368.83. Intervenor-appellee is to bear all costs.
Affirmed in part; reversed in part; and rendered.