HAMLIN, Justice
(dissenting) :
I dissent from the majority opinion insofar as it found that Note No. 3 primes No. 2. I do not believe that this is a case for all seasons; I find that it is a matter peculiar to its own facts and circumstances and should be decided among the parties according to their immediate actions and intentions.
*588 The' issue raised herein concerns the ranking of Notes 2 and 3 of the following described three notes:
1. A $10,000.00 note executed by Leroy Michael Foy and Mrs. Leroy Michael Foy on February 14, 1963, and secured by a first mortgage dated February 14, .1963, upon an improved lot in Jefferson Parish, Louisiana, payable to the order of First National Life Insurance Company. (The note provided for 180 equal monthly payments.)
2. A $3,000.00 note executed by Leroy Michael Foy and Mrs. Leroy Michael Foy on December 20, 1966, payable to the order of First National Life Insurance Company. The note was payable ten years after date — repayable in 120 mo. amortized payments, $33.31 each— and contained the following inscription on its back: “This note is secured by a mortgage executed under date of 2-14-63 together with the said mortgage note. It being understood that the mortgage and note shall remain in full force and effect as collateral security to this note.”
3. A bearer $16,704.00 note, subject to a rebate of $3,188.00, executed by Elise Hartman Foy and Leroy Michael Foy on December 19, 1968, in favor of Thrift Funds Canal, Inc., New Orleans, Louisiana, and made payable in 48 monthly installments of $348.00. The note was paraphed “Ne Varietur” for identification with an act of mortgage dated December 19, 1968, recorded December 27, 1968. (The mortgage was a second mortgage and was given on the same property which secured the 1963 note, supra.)
Thrift Funds initiated executory process proceedings on May 15, 1969, against Leroy Michael Foy’s property on which it held a second mortgage to satisfy its alleged claim of $13,516.00. It alleged that payments on its promissory note, Note No. 3, supra, were in arrears, and that Foy had failed to make a single payment on said note. It further alleged:
“Defendant further agreed to promptly pay all payments on prior mortgages to which the mortgage is subordinate and that failure to do so would constitute a default hereunder and that the holder may at his option, pay any such amounts due or necessary and that all sums so paid shall be secured by this mortgage at eight (8%) per cent per annum interest.
“Defendant failed to make delinquent mortgage payments to First National Life Insurance Company (hereinafter called ‘First National Life’), holder of a superior mortgage in the original principal amount of $10,000.00 by act before Frank S. Norman, N. P., dated February 14, 1963, * * * As of the date of filing suit in the above entitled and numbered 'cause, petitioner has had to *590 pay to First National Life the sum of $470.80 (being $117.70, each for February, March, April, May, 1969), for which sum petitioner is entitled to the security as aforesaid and the reimbursement thereof plus 8% per annum interest on said sum of $470.80 from May 8, 1969 until paid and 8% per annum interest on the sum of each additional payment of $117.70 it may make plus any and all sums it may have to pay First National Life for fees due its attorney or attorneys until paid, all as attested to by the authentic act annexed hereto and made part hereof as though copied in extenso.”
The prayer of Thrift Funds’ petition for executory process asked that the instant property be sold at a price to satisfy the $13,516.00, supra, together with interest and attorney fees, plus the sum of $470.80 and interest, plus interest on/and all sums it might have to pay the first mortgage, holder.[1]
First National Life Insurance Company intervened in the executory process proceedings, September 8, 1969. It alleged the making of the two notes and mortgage, supra, and showed that the notes, not having been paid according to their terms, were placed in the hands of an attorney on November 6, 1968, due demand having been made upon the mortgagor for payr ment thereof. Intervenor further showed that, “in the above entitled and captioned proceedings, Thrift Funds Canal, Inc., second mortgagee, is foreclosing upon its second mortgage note, and that petitioner desires to preserve its lien against the said property for the balance due on the principal amount of its original mortgage note, which together with interest amounts to $6,765.71, as of this date, and on the second mortgage note in the sum of $2,376.-62, including interest, as of this date, fo *592 gether with $47.07 representing repairs to preserve the property by the installation of new windows which were broken by vandals, including $386.00 for insurance premiums, together with interest on said notes until same are paid, as well as 10% attorney fees, said notes having been placed with petitioner’s counsel because of the default thereon.”
On September 24, 1969, Thrift Funds answered the intervention. It stated that on September 10, 1969, at Sheriff’s Sale, it purchased the immovable property herein involved for $16,000.00 and is the lawful owner thereof. It urged that the balance due on the $3,000.00 note, supra, should not be subtracted from the proceeds of the judicial sale. It averred “that under information and belief that the alleged balance by intervenor of $6,765.71 on its ‘original mortgage note’ as set forth in Paragraph 8 of intervenor’s petition is in fact and in law greater than it should have been; that in truth and in fact payments made to intervenor should have been credited to said mortgage note which were in violation of law imputed improperly to the so-called ‘second mortgage note’ referred to in intervenor’s petition and more particularly but without limitation to Paragraph 4, thereof.” (Paragraph 4 described the $3,000.00 note, reciting that there was a balance of $2,376.62 due on it, and that it was secured by the original $10,000.00 mortgage, supra.) Thrift Funds prayed for dismissal of First National’s intervention and for delivery to it of a proces verbal deed free and clear of all liens, mortgages and privileges.
On October 6, 1969, First National brought a rule to show cause, alleging that it was due the sum of $10,499.63[2] from *594 the proceeds of the judicial sale. It prayed for deposit of the proceeds of the sale with the Sheriff, recognition of its intervention, and preferential payment of its claims.
Thrift Funds answered the rule to show cause, October 16, 1969, and averred in part: “ * * * while it did make various payments to Intervenor, it did so in accordance with a letter received by its supervisor, Mr. Alfred Middleton, which letter stated that the amount due for the delinquent months of February, March and April, was $117.70 each, and same did not state that payment was towards Hvo different notes. Furthermore, Thrift Funds has not made a payment of any kind to Intervenor since Intervenor filed its petition of intervention. * * * ”[3]
The trial court rendered judgment on December 23, 1969, recognizing the intervention of First National Life Insurance Company and ordering that Intervenor be paid in preference to all other claims, privileges and liens in the sum of $10,499.-63 with interest. It stated that the sum included the monies due on both promissory notes secured by the $10,000.00 mortgage and also monies due for repairs, insurance, etc.[4] The trial court reasoned:
“The Court after considering pertinent jurisprudence, is of the opinion that First National’s position is correct.
“It should be pointed out:
“(1) That the original debt to First National was never extinguished and that First National’s second note was not an effort to revive a dead — i. e. paid off — debt; and
“(2) That First National’s mortgage expresses on its face the contemplation *596 of future debts to be secured by the $10,000.00 mortgage.
"The mortgage secures the $10,000.00 note ‘and all other indebtedness secured thereby.’
“First National’s second note did not extend Mr. Foy’s indebtedness beyond the'original $10,000.00; in other words, third parties — that is, the general public —had notice that Mr. Foy was indebted up to $10,000.00 and that his property secured payment up to this sum. Had the second note increased Mr. Foy’s total indebtedness to First National to, say, $15,000.00, it is the opinion of the Court that the mortgage would secure payment of only $10,000.00. Of course, this issue was not present as Mr. Foy owes $6,765.71 on the first note and $2,376.62 on the second, the total being under $10,000.00.”
Thrift Funds appealed to the Court of Appeal, Fourth Circuit. That Court, relying on the case of Walmsley v. Resweber, 105 La. 522, 30 So. 5, reversed the judgment of the trial court so as to recognize the privilege of Thrift Funds Canal, Inc. in priority to any sums due on the 1966 note payable to First National Life Insurance Company. Insofar as the judgment of the trial court recognized the first privilege of First National as to all sums due on the 1963 note, the Court of Appeal affirmed the judgment.
The application of First National Life for Certiorari was granted; the following three errors are assigned to the judgment and decision of the Court of Appeal:
1. The Court erred in its holding that the 1963 mortgage given to petitioner did not qualify as a mortgage to secure future advances with respect to third parties because it contains no stipulation to that effect.
2. The Court erred in its holding that an ordinary conventional mortgage to secure future advances must so expressly stipulate to he valid against third parties.
3. The Court erred in not recognizing that the 1963 mortgage and mortgage note were pledged as collateral security for the 1966 promissory note, thereby effecting a collateral mortgage transaction.
Thrift Funds urges that we confirm and approve the judgment of the Court of Appeal. It avers “that the legend or inscription on the reverse of the December 20, 1966 note did not ‘convert’ the $10,-000.00 1963 mortgage and note to a ‘collateral’ mortgage and note to secure the December 20, 1966 note to the prejudice of respondent or any other third person, because: (a) the one note for $10,000.00 described in intervenor’s mortgage is payable to the order of First National Life Insurance Company and not a nominal *598 party. (Tr. 105) Scallan v. Simmesport State Bank, supra; (b) the $10,000.00 mortgage note was not given in pledge as a security for another or other obligations whether evidenced by ‘hand notes’ or otherwise. See Baton Rouge Wood Products, Inc. v. Ezell, 251 La. 369, 204 So.2d 395 (1967); and (d) [c] intervenor’s act of mortgage does not describe an acceptance of the active mortgage. French v. The Mechanics and Traders Bank, 4 La.Ann. 152 (1899) and Woodward Louisiana Notarial Manual, 166 (2d ed. 1962).”
The positions of counsel in this Court are diverse. They would like for us to lay down a hard and fast rule governing financial transactions — note-mortgage —similar to those herein involved. Counsel for First National Life prays for a broad interpretation of the instant mortgage, alleging that it is conventional but alternatively collateral; counsel for Thrift Funds prays for a narrow and strict “hew the line” construction.
I have set forth the facts, supra, in detail because I find, as stated supra, that this case rests on its own peculiar facts and circumstances.
The instant notes were not negotiated to third parties; they remained in the hands of the first holders; there were no innocent parties to the transactions, supra. Insofar as the record shows, the 'parties did not rely on the faith of the public records; no fraud was proved; there was communication between First National and Thrift Funds.
I am fully aware of the technical banking, finance company, homestead, credit, insurance, etc., transactions of the 1970’s. Conventional and collateral mortgages are given daily as security devices. It has been held that the transactions, in order to avoid litigation, should be specific.[5]
*600 The question at hand is whether the instant mortgage of 1963 qualifies as security for the 1966 note.
Pertinent provisions of the mortgage recite:
“ * * * appearer declared and acknowledged that he is justly and truly indebted * * * in the full and true sum of: * * * ($10,000.00) * * * which the said FIRST NATIONAL LIFE INSURANCE COMPANY has this day loaned and advanced to the herein mortgagor and for the reimbursement whereof the said mortgagor has made and subscribed ONE (1) certain Promissory Note in the principal sum of: * * *
“Now in order to secure the full and punctual payment of the above described note in principal and interest, together with all attorney fees, taxes and premiums of insurance, as herein specified, the said mortgagor declares that he does by these presents, mortgage, effect and specially hypothecate, in favor of the said FIRST NATIONAL LIFE INSURANCE COMPANY, and to enure to the use and benefit of any and all future holders of said note, * * *
“The mortgagor agrees that the herein mortgaged property shall not be sold with the right of assumption of the balance due on the herein mortgage without the prior written consent of the mortgagee, or any future holder or holders of said mortgage note, * * *
“ * * * then in any of said events, the said mortgage note, or notes, in principal and interest, and all other indebtedness secured hereby shall, at the option of the holder of said mortgage note or notes, immediately become due and payable, * * * ” (Emphasis supplied.)
The mortgage described the 1963 note and recited that the note had been paraphed “Ne Varietur/’ The mortgage and note were recorded in Mortgage Book No. 409, Folio 994, Parish of Jefferson.
The record reveals that no other indebtednesses with respect to the 1963 mortgage were incurred by Foy between the date of recordation of the 1963 mortgage and note, supra, and the execution of the 1966 note. *602 Foy’s original indebtedness to First National was $10,000.00, and he had reduced his 1963 note to approximately $7,000.00 when he executed the 1966 note for $3,000.-00. The 1966 transaction indicated an intention on the part of the borrower to remain indebted to First National to the extent of $10,000.00 and an intent on the part of the lender to loan Foy an amount equal to the $10,000.00 limit of the 1963 mortgage.
The 1966 note payable to First National Life Insurance Company was neither recorded nor paraphed. The following inscription, as stated supra, appears on the back of the note, “This note is secured by a mortgage executed under date of 2-14 — 63 together with the said mortgage note. It being understood that the mortgage and note shall remain in full force and effect as collateral security to this note.”
Without equivocation, I find that First National Life Insurance Company and Foy intended that the 1963 mortgage secure the 1966 indebtedness as well as the balance due on the 1963 note.
“Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
“But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good.” LSA-R.C.C. Art. 11.
I conclude that between Foy and First National a binding contract with respect to the securing of the 1966 note by the 1963 mortgage was executed. The mortgage sufficed in its provisions, quoted supra, to secure the 1966 debt at the time that it was incurred.
The transactions detailed, supra, reflect that when Thrift Funds and Foy executed the 1968 note, no concealment took place. Subsequent transactions, such as the letter of April 25, 1969, written by First National to Thrift Funds, show an awareness on the part of Thrift Funds as to past negotiations between Foy and First National,
As stated supra, Thrift Funds made payments on Foy’s indebtedness to First National. It states that such payments were to be attributed only to the 1963 note, but First National’s receipts issued to Thrift Funds stated otherwise, and Thrift Funds was cognizant of the receipts’ recitations. Throughout the first half of 1969, there was communication between Thrift Funds and First National; both parties knew of each other’s actions. The property was finally sold on September 10, 1969, and purchased by Thrift Funds.
I am constrained to conclude that under the facts and circumstances peculiar to this *604 matter, First National’s claim to priority of payment for the balance due on its 1966 note from Foy out of the proceeds of the instant Sheriff’s Sale should be sustained. I also conclude that under the facts and circumstances herein presented, the 1963 mortgage secured the 1966 note given by Foy to First National. My findings and conclusions preclude the necessity of a discussion of the jurisprudence quoted and cited in the majority opinion.
I respectfully dissent.

. Evidence of record discloses that on May 8, 1969, Thrift Funds paid First National Life Insurance Company $337.-56 — $140.95, interest, and $196.61 principal, on behalf of Foy. The receipt recited that there was a $6,887.52 balance due.
The evidence of record also discloses that on May 8, 1969, Thrift Funds paid First National Life Insurance Company $133.24 — $50.01, interest, and $83.23, principal — on behalf of Foy. The receipt recited that there was a balance due of $2,432.59.
The above two payments of $337.56 and $133.24 amount to $470.80.
The evidence also discloses that on June 16, 1969, Thrift Funds made similar paj'ments to those above in the sums of $84.39 — $34.44, interest, $49.94, principal, balance $6,837.57 — and $33.31 — $12.16. interest, $21.15, principal, balance, $2,-411.44.
The evidence further discloses that on July 16, 1969, Thrift Funds made payments of $84.39 — $34.19, interest, $50.20, principal, balance, $6,787.37 — and $33.31 • — $12.06, interest, $21.25, principal, balance, $2,390.19.
The evidence still further discloses that on August 19, 1969, two payments were made of $33.31 — $11.95, interest, $21.36, principal, balance $2,368.83 — and $84.39 —$33.94, interest, $50.45, principal, balance $6,736.92.

. The above amount includes the following:
(a) Amount due First National Life Insurance Company on mortgage note, including principal and interest, through 9/8/69 $ 6,765.71
(b) Amount due on second note (supplemental mortgage note) of $3,000 to First National Life Insurance Company, including principal and interest, through 9/8/69 2.376.62
Total amount due First National Life Insurance Company $ 9,142.33
10% attorney fees on above 914.23
Total $10,056.56
Due for Repairs 47.07
Due for Insurance 386.00
Court costs — filing petition 10.00
TOTAL $10,499.63

. On April 25, 1969, Mrs. Aline Duelfer, Cashier Mortgage Loan Dept., First National Life Insurance Company, addressed a letter to Mr. Alfred Middleton, Thrift Funds Canal, Inc., with respect to Leroy M. Foy; the letter recited, in part:
“Confirming our telephone conversation in regard to the above mentioned mortgage loan, it will be agreeable with our Company for you to pay the three delinquent payments on this account, February, March and April, in the amount of $117.70 each or a total of $353.10.
“After these three payments are credited to the account, the unpaid principal balance will then be $9,390.85.
“If it is your desire to file foreclosure proceedings on this party, our Company has no objections to this step. However, as far as you assuming our loan at that time, we prefer that you liquidate our loan as of that date.”

. The record contains a statement, dated January 20, 1970, from the Deputy Sheriff, Parish of Jefferson, to the effect that the property herein involved was appraised at $24,000.00; it was sold to Donald N. Memmer, Attorney, acting as agent for Thrift Funds Canal, Inc., for $16,000.00. “The amount of $10,735.77 was paid to Normann & Normann, Attys., for First National Life Insurance Co., to satisfy the mortgage recorded M. O. B. 409/994. The amount of $4,898.79 was retained and applied to the mortgage held by the plaintiff, THRIFT FUNDS CANAL, INC., recorded in M. O. B. 523, folio 586.”

. In Scallan v. Simmesport State Bank, La.App., 129 So.2d 49, the Court stated: “The first argument of plaintiffs, which we deem it appropriate to consider, is that the mortgage notes issued in 1949 were for a specific debt, and were not for future use in favor of any future holders, and consequently that the mortgage was extinguished when Mr. Noah J. Scallan reacquired the notes. This argument is without merit. An examination of the 10 mortgage notes shows that they are made payable to a nominal party, that is, they were made payable to the maker and by him endorsed. The mortgage itself shows that it is drawn in favor of ‘any future holder or holders of the herein described notes’. The jurisprudence is well settled that such mortgage notes drawn for future use and in favor of any future holder may be reacquired by the maker and reissued as collateral security and the mortgage will not be extinguished. In the ease of Mente & Co., Inc. v. Levy, 160 La. 496, 107 So. 318, 320, the court cited many authorities and held as follows:
“ ‘The rule is well settled, at least in the jurisprudence of this state, that, when a mortgage is given for a specific debt to a particular creditor, payment of that debt extinguishes the mortgage and a reissue of the note will not revive or reinstate the mortgage.
“ ‘Indeed that is the plain provision of the Code.
*600 “ ‘Hence it happens that in all cases where the principal debt is extinguished the mortgage disappears.’ C.C. Art. 3285.
“ ‘It is otherwise when the mortgage note is not for a specific debt, but for future use and in favor of any future holder. In such a case the note may be reissued and used as collateral and the accessory right of mortgage preserved intact.’ ” See, Baton Rouge Wood Products, Inc. v. Ezell, 251 La. 369, 204 So.2d 395 ; 25 La.L.Rev. 789.
In the instant case, 242 So.2d at 254, the Court of Appeal said, “There is moreover no doubt that our law can and does provide for a mortgage to secure future advances.”